Stephen Charles FROHNE, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–94–01226–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

April 25, 1996.

Order Overruling Rehearing
Aug. 15, 1996.

L.T. Bradt, Houston, for Appellant.

Michael J. Guarino, Galveston, for Appellee.

Before O'CONNOR, WILSON and COHEN, JJ.

## OPINION

COHEN, Justice.

A jury found appellant guilty of indecency with a child. The trial judge assessed punishment at 10–years imprisonment, probated. In four points of error, appellant complains of (1) improper bolstering of the State's witnesses, (2) insufficient evidence, (3) prosecutorial misconduct, and (4) ineffective assistance of counsel. We affirm.

### Background Facts

The complainant, L.D., is a minor child who lived with her mother and her mother's husband, the appellant. L.D. stayed often with Ruby Hansen, her godmother. Hansen became suspicious that something was wrong when L.D. did not want to be alone with the appellant. In July 1993, Hansen asked L.D. whether the appellant molested her. L.D. responded affirmatively and described in graphic detail the sexual acts in which the appellant forced her to participate. Hansen reported the problem to Child Protective Services (C.P.S.), and C.P.S. initiated an investigation. During this investigation, L.D. was interviewed four times by C.P.S. workers, once by a pediatrician, and 30 to 40 times by a clinical social worker. The investigation led to the filing of charges against the appellant.

### Bolstering

In point of error one, appellant contends the State impermissibly bolstered the testimony of L.D., George Schuler, Jr., and Emily Ginsberg, two of the State's expert witnesses. Appellant waived this complaint by not objecting at trial. TEX.R.APP.P. 52(a).

We overrule point of error one.

### Sufficiency of the Evidence

In point of error two, appellant contends the evidence is insufficient to prove he touched L.D.'s genitals with the intent to arouse or gratify his own sexual desires. *See* TEX.PENAL CODE § 21.01(2). We follow the usual standard of review. *Dunn v. State,* 819 S.W.2d 510, 513 (Tex.Crim.App.1991).

L.D. was 14 at the time of trial in 1994. She testified the appellant began sexual contact with her when she was about five years old and continued until she was 12, when she told Hansen. L.D. testified appellant touched her genitals with his hands, and that when he did so, it usually occurred in the bedroom. L.D. also testified the appellant made her touch his "private parts," and he would not let her close her bedroom door when she dressed. Both Ginsberg and Hansen testified L.D. told them appellant tried to penetrate L.D., performed oral sex on L.D., and forced L.D. to perform oral sex on him. The evidence is sufficient.

We overrule point of error two.

### Prosecutorial Misconduct

In point of error three, appellant contends he was denied a fair trial because of prosecutorial misconduct, specifically, that the prosecutor asked him on cross-examination: (1) whether his parental rights had been terminated; and (2) whether he had served and been injured in the Vietnam War. Appellant did not object at trial, thus waiving any error.

We overrule point of error three.

### Ineffective Assistance of Counsel

In point of error four, appellant raises six omissions by his attorney that he alleges were ineffective assistance of counsel during the guilt-innocence phase of trial.

We follow the usual standard of review and consider each of appellant's complaints. *See Jackson v. State,* 877 S.W.2d 768, 771 (Tex. Crim.App.1994).

### No Awareness of Relevant Law

Appellant first contends counsel was ineffective because he was not familiar with two important cases, *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and *State v. Michaels,* 136 N.J. 299, 642 A.2d 1372 (1994). We will address the contention when analyzing appellant's remaining allegations.

### No Objection to Inadmissible Expert Testimony

■ Appellant asserts counsel was ineffective for not objecting to Ginsberg's expert testimony based on *Daubert* and Tex.R.Crim. Evid. 705(c).[1] Ginsberg, a clinical social worker, testified as the State's expert that she had treated L.D. once a week beginning in October 1993. Appellant contends counsel was ineffective for not objecting to the following portions of Ginsberg's testimony:

Q. Can you describe this child when she first came to you?

A. When I first saw [L.D.], she was very—what you would call emotionally flat. She did not have the after effect. She was not fearful; she did not cry. She did not seem extremely anxious as most children do. I would describe her as withdrawn. She could talk about some of the things that would happen to her, but not the kind of emotion that you would expect from a child who had been through something like that.

Q. What do you mean by that?

A. Well, she would describe to me, for example, the events that led up to child welfare intervening in her life, but she was not fearful about it. And she would not cry. She would just sit there and tell me about it with a very calm expression, really inappropriate expression for what she was describing to me.

Q. Have you seen that before in incest victims?

A. Yes.

Q. Is it common or uncommon?

A. It's common.

Q. And why do you think that is?

A. In [L.D.'s] case I think it's because she had lived in this situation for such a long period of time that she had in my opinion given up hope that anything would change, that she was resigned to the way she lived, to the things that happened to

---

1. Rule 705(c) states:
   Admissibility of opinion. If the court determines that the expert does not have a sufficient basis for his opinion, the opinion is inadmissible unless the party offering the testimony first establishes sufficient underlying facts or data.

her; and it was just normal to talk about it like that.

Q. Do you find that resignation to be common?

A. Yes.

Q. Does it kind of depend upon whether the abuse is long term or short term?

A. I see it much more often in children who have been abused over a long period of time.

Q. Did you—as time went on, did you notice any changes in her?

A. Yes.

Q. Can you tell us about that?

A. Yes. Today she is quite a different child than she was when I first began to see her. She talks more about the abuse that occurred to her, the different incidents. She can talk about that with much more freedom now.

. . . .

Q. Have there been any other changes in [L.D.] that you noticed?

A. I think less depressed than initially. She has talked with me. It has taken until this spring until she trusted me to explain to me some of the times where she felt like killing herself and some attempts to hurt herself. She was very fearful that I would say she would go to a mental hospital if she told me things. She was worried about that.

Q. What are the attempts she made to hurt herself?

A. She has described to me a time when she took what she would call an overdose of Tylenol. I don't know how many pills that was. It was sometime ago; but when she took a lot of Tylenol, she said this was when she was in her mother's custody. At other times she scratched herself with her nails or with a nail file. Again, I think I call this self mutilation, just an attempt to hurt herself. Another time she described thinking about and planning to and actually laying down behind a car that was parked in the street. The car did not move, but her intent was to have something terrible happen to her because she wasn't worth anything in her mind.

Q. These attempts at self mutilation, is that common in incest victims?

A. Yes.

. . . .

Q. Do you find it common or uncommon for children who have been the victims of incest to recant soon after they made a disclosure?

A. Yes.

Q. Why do you think that is?

A. They realize that once they have made an outcry or made a disclosure to someone who has indeed taken them seriously and report it to the police or to Children's Protective Services, they realize, I think, that they have set in motion something they can't control at all; and they become very fearful that they have wrecked their family, that they are going to be responsible for someone going—possibly being arrested, going to jail, their mother or father hating them, of being the focus of a lot more anger and disgust than they have had in the past. And the fear of the unknown is very frightening to a child.

Q. Can you describe what a parentified child is?

A. A parentified child is a child who over a course of years has had to take on several different roles within the family, many of them which are not appropriate for a child her age. And in [L.D.'s] case she at times felt she had to take care of her mother. At times she was a sexual partner for her stepfather, at times she was supposed to be a normal child. It's at times she could be a normal child. So, there were a variety of roles; but the main ones when you call a child parentified, they have taken on roles of a parent.

Q. Did you see those symptoms in [L.D.]?

A. Yes.

Appellant first contends that Ginsberg was allowed to testify without objection to her opinion that appellant sexually abused L.D. Although Ginsberg did not directly state such an opinion, we agree it was implicit in the above-quoted testimony. Appellant further contends this opinion testimony was inadmissible under *Daubert* because it was subjective rather than factually based. Specifically,

he contends the only facts Ginsberg elicited to support her opinion can also be present in children who are not sexually abused, *i.e.*, a resigned and withdrawn attitude, attempts at self-mutilation, and recanting a story. Appellant implicitly argues that the judge would not have admitted Ginsberg's opinion testimony if defense counsel had taken Ginsberg on voir dire at the beginning of her direct examination and objected to the testimony after establishing the basis of her opinion. *See* TEX.R.CRIM.EVID. 705(b).

■ It is within the trial court's discretion whether to allow a witness to testify as an expert. *Steve v. State*, 614 S.W.2d 137, 139 (Tex.Crim.App.1981). Appellant cites no Texas cases, and we know of none, holding counsel ineffective for failing to object to such testimony. The cases he relies on, *Cohn v. State*, 849 S.W.2d 817, 819 (Tex. Crim.App.1993), and *Duckett v. State*, 797 S.W.2d 906, 917 (Tex.Crim.App.1990), both held, unanimously in *Cohn* and by an 8–1 majority in *Duckett*, that similar testimony was admissible.

Rule 702 provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

TEX.R.CRIM.EVID. 702. The Court of Criminal Appeals has interpreted rule 702 similarly to FED.R.EVID. 702 in *Daubert*. *See Kelly v. State*, 824 S.W.2d 568, 571–73 (Tex.Crim. App.1992). In *Kelly*, the court addressed the admissibility of *novel* scientific evidence. *Id.* Ginsberg's testimony, however, was not based on a novel scientific test or theory, but on her consultations with L.D. and her 20 years of experience in working with sexually abused children. Based on this experience, Ginsberg testified she had noticed common behavioral patterns in children sexually abused by a family member, and L.D. displayed many of these behaviors. Thus, appellant has not shown that counsel was deficient by not objecting on the basis of rule 702.

■ Appellant also asserts counsel was ineffective for not objecting based on TEX. R.CRIM.EVID. 705(c) because Ginsberg's testimony did not have a sufficient basis. There is language in *Cohn* suggesting that testimony like Ginsberg's "may well have been objectionable" under rule 705(c). 849 S.W.2d at 819. In discussing the relevancy of expert testimony describing the behavior of sexually abused children, the court stated:

The probative value of expert testimony describing behaviors observed in young sexually abused children is highest when there is a coalescence of three types of behaviors: (1) a central core of sexual behaviors which are strongly associated with sexual abuse; (2) nonsexual behaviors which are commonly observed in sexually abused children; and (3) medical evidence of sexual abuse.

Probative value declines as sexual behaviors and medical evidence decrease in proportion to nonsexual behaviors. When the only evidence consists of a number of ambiguous, nonsexual behaviors, the evidence may lack any probative value, or probative worth may be outweighed by the potential for unfair prejudice or jury confusion.

When a child demonstrates no sexual behaviors, but does experience signs of serious anxiety or post-traumatic stress disorder, expert testimony may still be relevant. In this scenario, however, testimony serves only to establish that the child may have experienced some type of traumatic event. Such testimony is not specific to sexual abuse.

Absent medical evidence or evidence of behavior more closely determinative of sexual abuse, it seems the psychological community is unwilling to find evidence of anxiety sufficient to support the conclusion, even to a reasonable clinical certainty, that *sexual* abuse has necessarily occurred. Therefore, to the extent Roy's testimony may have suggested that evidence of anxiety behavior is enough in and of itself to indicate *sexual* abuse, it may well have been objectionable under TEX. R.CRIM.EVID., Rule 705(c). But to the extent it only provided circumstantial evidence that the children did experience

*some* traumatic event, Dr. Roy's testimony, both that anxiety behavior is at least consistent with sexual abuse, and that the children here exhibited such behavior in his presence, was relevant evidence, under Tex.R.Crim.Evid., Rules 401 & 402. It should come in as substantive evidence unless "its probative value is substantially outweighed by the danger of unfair prejudice ..." Tex.R.Crim.Evid., Rule 403.

.   .   .   .   .   .

Dr. Roy's testimony that the children exhibited anxiety behaviors is circumstantial evidence that *something* traumatic happened to them. That this evidence in some small measure corroborates the children's own testimony that appellant sexually molested them does not make it any less relevant—in fact, quite the opposite. Of course, like all corroborating evidence, because it is consistent with the children's story, it also has a tendency to make their testimony more plausible. But we should not for that reason exclude it for "unfair prejudice" under Rule 403, supra.

*Cohn,* 849 S.W.2d at 818–20 (footnotes and interior quotes omitted) (emphasis in original).

Even if Ginsberg's testimony was objectionable under rule 705(c), to the extent it suggested that "anxiety behavior is enough in and of itself to indicate sexual abuse," 849 S.W.2d at 819, and even if defense counsel had objected on this basis, the prosecutor still could have used Ginsberg's testimony to prove that anxiety behavior was "consistent" with sexual abuse and that L.D. exhibited such behavior in Ginsberg's presence. *See id.* at 819; Tex.R.Crim.Evid. 401–02. The *Cohn* case does not make testimony like Ginsberg's inadmissible per se, and the difference between testimony that "may" be inadmissible under *Cohn* and that which *Cohn* expressly allows is not so great that there is a reasonable probability the outcome of the trial would have been different if counsel had objected.

### No Challenge to Competency of Witness

■ Appellant contends counsel was ineffective for not challenging L.D.'s competency to testify. L.D. was interviewed numerous times before trial by C.P.S. workers, by a pediatrician, and by Ginsberg. Based on *Michaels,* a New Jersey case, appellant contends defense counsel could have established L.D.'s sexual memories were implanted and challenged her competency to testify.

We decline to hold defense counsel ineffective for not relying on nonbinding authority from another jurisdiction. Further, an objection to L.D.'s competency would likely have been overruled. A witness with personal knowledge may testify. Tex.R.Crim.Evid. 602. L.D. had personal knowledge. Thus, appellant's contention that L.D. could have been shown to be an incompetent witness is, at best, highly speculative.

Finally, L.D.'s initial outcry statement, which of course was made before any interviews, was more damaging to appellant than L.D.'s trial testimony. In her outcry statement, L.D. said appellant tried to put his penis in her several times, kissed her "all over" and made her kiss him "all over," told her it was okay if she "swallowed it," and touched her "private parts" with his tongue and hand. Under these circumstances, we conclude that counsel's decision not to pursue this strategy was not deficient, and in addition, there is no reasonable probability that pursuing it would have led to a different result at trial.

### No Objection to Improper Interrogation

Appellant next contends defense counsel was ineffective for not objecting to improper pretrial interrogation of L.D. Appellant asserts counsel should have introduced into evidence three videotaped pretrial interviews with L.D. to show she was improperly coached during the interviews. The videotapes are not part of the record. Therefore, no deficiency has been shown.

Appellant next argues counsel should have objected that C.P.S. interviewed L.D. without recording some of the interviews. There is no recording requirement. Therefore, counsel was not deficient.

### No Request for Limiting Instructions

■ Appellant next contends counsel was ineffective for not requesting limiting in-

structions as to the testimony of witnesses who were not outcry witnesses. *See* TEX. CODE CRIM.PROC. art. 38.07.[2] Appellant relies on *Brown v. State,* 649 S.W.2d 160 (Tex. App.—Austin 1983, no pet.), in which the court held an expert who is not an outcry witness under article 38.07 may still testify about an outcry statement in order to show the basis for his expert opinion. *Id.* at 163 (doctor who testified as medical expert could relate statement by victim). The court did not hold that limiting instructions were required, nor did the defendant there contend they were. The contention on appeal was that the doctor's testimony was inadmissible hearsay. *Id.* at 161. The court observed that no limiting instruction was requested; thus, any potential error was waived. *Id.* at 163. Moreover, appellant does not state what limiting instruction should have been given. Thus, no deficiency has been shown.

### No Objection to Mertelle Norton's Testimony

■ Mertelle Norton, L.D.'s grandmother, testified as an expert witness for the State. Appellant contends counsel was ineffective for not objecting to Norton's testimony because (1) Norton was not qualified as an expert witness, and (2) Norton's testimony that L.D. was sexually abused was based on symptoms that are consistent with traumatic experiences other than sexual abuse. Norton's testimony regarding the symptoms of sexual abuse was cumulative of Ginsberg's testimony. Therefore, appellant cannot show the lack of objection constituted ineffective assistance. Moreover, Norton's suspicions of abuse were based on her education, training, and experience as a pediatric nurse. Because the qualifications of experts is a discretionary matter for the trial judge to decide, appellant has not shown that an objection on this basis to Norton's testimony would have been sustained.

Finally, we observe that trial counsel convinced the judge to grant appellant probation, even though the State argued for the

maximum sentence of 20 years. Although appellant, for this obvious reason, does not attack counsel's performance at the punishment stage, this fact also influences our conclusion that counsel was not ineffective.

We overrule point of error four.

We affirm the judgment.

O'CONNOR, Justice, dissenting.

I dissent on the resolution of point of error four. I would hold the appellant, Stephen Charles Frohne, was denied reasonably effective assistance of counsel. I would reverse and remand for a new trial.

### Failure to Object to Corruption of Memory

In point of error four, the appellant contends his trial counsel was ineffective for not challenging the competency of the minor, L.D., to testify. Specifically, the appellant contends L.D. was repeatedly interviewed by persons who were hostile to the appellant and believed him to be guilty. The appellant contends that when a child is subjected to repeated and improper interrogation, it can result in the creation of a false memory that renders the child's recollection incompetent. The appellant contends defense counsel should have attempted to establish L.D.'s memories were implanted and should have challenged L.D.'s competency to testify.

The majority overrules this complaint stating L.D.'s outcry statement was made before she was interviewed by the CPS's employees, and her outcry statement was more damaging than her trial testimony. That response overlooks the fact that L.D. was repeatedly interviewed before the outcry statement by her grandmother and godmother. Both women believed the appellant was sexually abusing L.D.

The National Center for the Prosecution of Child Abuse, in cooperation with the National District Attorney's Association and the American Prosecutor's Research Institute, has adopted protocols to serve as standards

---

**2.** That article provides:

A conviction ... is supportable on the uncorroborated testimony of the victim of the sexual offense if the victim informed any person, other than the defendant, of the alleged offense within one year after the date on which the offense is alleged to have occurred.

for the proper interrogation of suspected child-abuse victims. Those interview guidelines require that an interviewer remain "open, neutral and objective." *State v. Michaels,* 136 N.J. 299, 642 A.2d 1372, 1378 (1994). Under those guidelines, an interviewer should not use leading questions, force a reluctant child to talk, speak negatively about the person accused, and should avoid multiple interviews with various interviewers. *Id.*[1]

In spite of these well-developed guidelines for conducting interviews of a child-victim in a sexual abuse case, the appellant's lawyer did not make any of the appropriate objections or develop the record to show that L.D.'s memory might have been corrupted by the influence of repeated interviews with persons who were hostile to the appellant.

If a competent lawyer had represented the appellant, he or she would have challenged the testimony of L.D. on the ground that L.D.'s memory had been corrupted by interviews conducted by persons who were hostile to the appellant and who showed their hostility to L.D. There is no sound trial strategy that can explain why trial counsel did not attempt to show the repeated interviews improperly influenced the memory of L.D., making her incompetent to testify.

I would hold the failure of trial counsel to pursue the line of inquiry suggested by reading the *Michaels* case resulted in ineffective assistance of counsel.

### Failure to Object to Inadmissible Expert Testimony

As part of point of error four, the appellant asserts his trial counsel was ineffective because he did not object to expert testimony from Emily Ginsberg and Mertelle Norton. Ginsberg, a clinical social worker, and Norton, L.D.'s grandmother and a nurse, testified the symptoms displayed by L.D. were common to children who had experienced

sexual abuse. Based on *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), the appellant contends his defense counsel should have challenged the scientific basis of this testimony. The appellant contends neither witnesses' testimony rises to the level of admissible expert testimony under Tex. R.Crim.Evid. 702. I agree.

The appellant argues Ginsberg's subjective belief does not qualify as "scientific, technical or other specialized knowledge that will assist the trier of fact." The appellant objects that Ginsberg testified to the following matters without objection from his lawyer:

* That L.D. had lived in a situation of incest for a long period of time;

* That L.D. had attempted to hurt herself, which was common of incest victims;

* That it was common for incest victims to recant soon after disclosure;

* That L.D. was a "sexual partner" with her step-father and replaced her mother;

* That L.D. exhibited symptoms commonly seen in incest victims; and

* That L.D.'s "resignation" was common in children who have been sexually abused for a long time.

The appellant objects that Norton testified to the following matters without objection from his lawyer:

* That she suspected L.D. had been abused by her "behavior patterns," which included gradual withdrawal, lack of eye contact, and low self-esteem.

The testimony of Ginsberg and Norton was their subjective interpretation of symptoms. Their testimony did not rise to the level of expert testimony admissible under Tex. R.Crim.Evid. 702. The Texas Rules of Criminal Evidence are based on the Federal Rules of Evidence. In June 1993, before this case was tried, the United States Supreme Court

---

1. In a civil case involving recovered memory of sexual abuse, the Supreme Court said:

> Memory is a multifarious, complex, usually reconstructive process. It does not retrieve information the way a video recorder or computer does. Everything sensed is not stored; recall of picture-perfect images is not automatic. A variety of social, psychological, and de-

velopmental factors commonly cause distortions at each stage of the process.... The real possibility of such distortions cannot be overlooked or minimized in determining what relation recalled memories bear to what really happened.

*S.V. v. R.V.,* 39 Tex.Sup.Ct.J. 386, 398–99 (1996).

changed the standard for the admissibility of expert testimony under the Federal Rules in *Daubert*. The Court said:

> [T]he word "knowledge" connotes more than subjective belief or unsupported speculation. The term "applies to any body of known facts or to any body of ideas inferred from such facts or accepted as truths on good grounds."

509 U.S. at 590, 113 S.Ct. at 2795 (citation omitted).

The appellant contends the opinion testimony in this case was inadmissible under *Daubert* because it was subjective rather than factually based. Specifically, the appellant contends the only facts Ginsberg elicited to support her opinion can also be present in children who are not sexually abused, *i.e.*, a resigned and withdrawn attitude, attempts at self-mutilation, and recanting a story.[2]

The majority responds to this argument by stating the well-known standard of review— it is within the trial court's discretion whether to allow a witness to testify as an expert. The majority notes the Court of Criminal Appeals moved in the same direction of interpreting Tex.R.Crim.Evid. 702 as the United States Supreme Court has interpreted Fed. R.Evid. 702 in *Daubert*. *See Kelly v. State*, 824 S.W.2d 568, 571–73 (Tex.Crim.App.1992).

In *Kelly*, the Court of Criminal Appeals addressed the admissibility of *novel* scientific evidence. *Id.* The majority holds Ginsberg's testimony in this case was not based on a novel scientific test or theory, but was based on Ginsberg's consultations with L.D. and her 20 years of experience in working with sexually abused children. That misses the point. Even though she had years of experience, her experience is merely anecdotal, and is not supported with any scientific indicia of reliability. The "expert" testimony offered by Ginsberg and Norton would not survive a challenge made by a lawyer familiar with *Daubert*. Unfortunately for the ap-

pellant, his lawyer was not familiar with *Daubert*.

The majority admits that, based on *Cohn v. State*, 849 S.W.2d 817, 818–19 (Tex.Crim. App.1993), Ginsberg's testimony was objectionable when it suggested evidence of anxiety behavior is sufficient to indicate sexual abuse. The majority states that the same testimony could have been admitted to show the behavior was consistent with sexual abuse. I disagree. Under *Daubert*, I do not think the testimony would have been admissible even to show the evidence was consistent with sexual abuse. If the appellant's attorney had objected and the court had excluded the testimony of Ginsberg and Norton regarding the connection between L.D.'s symptoms and sexual abuse, it would have reduced the chances of the appellant's conviction.

I believe the appellant has shown a reasonable probability the outcome of the trial would have been different had counsel objected.

### ORDER ON MOTION FOR REHEARING

WILSON, Justice.

Appellant filed a motion to supplement the record on appeal and a motion for rehearing. With Justice Cohen dissenting, the panel grants the motion to supplement the record on appeal. With Justice O'Connor dissenting, the panel overrules the motion for rehearing. However, we proceed to address an issue raised by the new material that has been added to the record.

■ On original submission, appellant contended counsel was ineffective because he did not introduce into evidence at trial three videotaped pretrial interviews with L.D. to show she was improperly coached during the interviews. This court held no deficiency was shown because the videotapes were not part of the record. We now grant appel-

---

**2.** In *S.V. v. R.V.*, the Supreme Court was presented with a case involving symptoms some experts said showed evidence of sexual abuse but which could also be evidence of other problems. In that case, the Court said it would not lower the bar of limitations based on a swearing match between experts over opinions. 39 Tex.Sup.Ct.J. at 397. If such expert testimony does not meet a minimal level to even support a civil suit, it should not contribute to a defendant's conviction.

lant's motion to supplement the record with the tapes and consider whether counsel was ineffective for not introducing them into evidence at trial.

This Court has reviewed the tapes. The tapes were made by CPS in July 1993 shortly after CPS initiated the investigation against appellant. All three tapes contain interviews between Schuler and L.D. Schuler was the CPS investigator assigned to the investigation of whether appellant molested L.D.

The first tape, recorded July 6, 1993, contains video but no audio. The video camera was not operating properly when this tape was made. Although we cannot tell what was said on this tape, the record shows that L.D. denied on the tape that appellant had molested her. The second tape, recorded July 16, 1993, contains audio, but the video is distorted. The third tape, recorded July 19, 1993, contains both audio and video.

The interviews on the second and third tapes were conducted similarly. Schuler interviewed L.D. in an informal manner. At times, he asked L.D. open-ended questions, but other times he prefaced his questions by explaining to L.D. what he knew about the case from his investigation. Viewed as a whole, we do not find the second and third tapes strongly suggestive. L.D. answered Schuler's questions calmly and confidently, and a jury would likely find her to be a credible witness. L.D. explained on the second and third tapes that she lied on the first tape because she was scared CPS would take her away from her mother if she told the truth. When she learned that this would not happen, L.D. decided to tell the truth.

Schuler testified for the State at appellant's trial. On cross-examination, counsel for appellant got Schuler to admit that L.D. denied being molested by appellant during the first taped interview.

L.D. also testified for the State at appellant's trial. On both direct and cross-examination, L.D. testified that she denied during the first taped interview with Schuler that appellant had molested her. L.D. said she did this because she was scared and did not know what would happen. On cross-examination, counsel for appellant got L.D. to ad-

mit that she had changed her story several times, i.e.:

1. On July 5, 1993, when talking with Schuler at her house, L.D. said appellant had molested her;

2. On July 6, 1993, during the first taped interview, L.D. denied appellant had molested her; and

3. On July 16 and 19, 1993, during the second and third taped interviews, L.D. again said appellant had molested her.

After viewing the tapes, we conclude appellant has not overcome the strong presumption that trial counsel's decision to not introduce the tapes into evidence might be considered sound trial strategy. See Jackson v. State, 877 S.W.2d 768, 771 (Tex.Crim. App.1994). The questions in Schuler's interviews were not strongly suggestive, and L.D. appeared to be a credible witness. Although L.D. denied appellant molested her during the first taped interview, counsel could not establish this by playing the tape because there was no sound. Counsel adequately established this fact through cross-examination of Schuler and L.D. Had counsel introduced the tapes into evidence as appellant suggests, we are not convinced there is a reasonable probability the outcome of appellant's trial would have been different. Jackson, 877 S.W.2d at 771.

We overrule appellant's motion for rehearing.

O'CONNOR, Justice, dissenting.

I withdraw my original dissenting opinion and issue this one in its place.

I dissent on the resolution of point of error four. I would hold the appellant, Stephen Charles Frohne, was denied reasonably effective assistance of counsel. I would reverse and remand for a new trial.

### Failure to Object to Corruption of Memory

In point of error four, the appellant contends his trial counsel was ineffective for not challenging the competency of the minor, L.D., to testify. Specifically, the appellant contends L.D. was repeatedly interviewed by persons who were hostile to the appellant

and believed him to be guilty. The appellant contends that when a child is subjected to repeated and improper interrogation, it can result in the creation of a false memory that renders the child's recollection incompetent. The appellant contends defense counsel should have attempted to establish L.D.'s memories were implanted and should have challenged L.D.'s competency to testify.

The majority overrules this complaint stating L.D.'s outcry statement was made before she was interviewed by the CPS's employees, and her outcry statement was more damaging than her trial testimony. That response overlooks the fact that L.D. was repeatedly interviewed before the outcry statement by her grandmother and godmother. Both women believed the appellant was sexually abusing L.D.

The National Center for the Prosecution of Child Abuse, in cooperation with the National District Attorney's Association and the American Prosecutor's Research Institute, has adopted protocols to serve as standards for the proper interrogation of suspected child-abuse victims. Those interview guidelines require that an interviewer remain "open, neutral and objective." *State v. Michaels*, 136 N.J. 299, 642 A.2d 1372, 1378 (1994). Under those guidelines, an interviewer should not use leading questions, force a reluctant child to talk, speak negatively about the person accused, and should avoid multiple interviews with various interviewers. *Id.*[1]

In spite of these well-developed guidelines for conducting interviews of a child-victim in a sexual abuse case, the appellant's lawyer did not make any of the appropriate objections or develop the record to show that L.D.'s memory might have been corrupted by the influence of repeated interviews with persons who were hostile to the appellant.

If a competent lawyer had represented the appellant, he or she would have challenged the testimony of L.D. on the ground that L.D.'s memory had been corrupted by interviews conducted by persons who were hostile to the appellant and who showed their hostility to L.D. There is no sound trial strategy that can explain why trial counsel did not attempt to show the repeated interviews improperly influenced the memory of L.D., making her incompetent to testify.

I would hold the failure of trial counsel to pursue the line of inquiry suggested by reading the *Michaels* case resulted in ineffective assistance of counsel.

### Failure to Object to Inadmissible Expert Testimony

As part of point of error four, the appellant asserts his trial counsel was ineffective because he did not object to expert testimony from Emily Ginsberg and Mertelle Norton. Ginsberg, a clinical social worker, and Norton, L.D.'s grandmother and a nurse, testified the symptoms displayed by L.D. were common to children who had experienced sexual abuse. Based on *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), the appellant contends his defense counsel should have challenged the scientific basis of this testimony. The appellant contends neither witnesses' testimony rises to the level of admissible expert testimony under Tex. R.Crim.Evid. 702. I agree.

The appellant argues Ginsberg's subjective belief does not qualify as "scientific, technical or other specialized knowledge that will assist the trier of fact." The appellant objects that Ginsberg testified to the following matters without objection from his lawyer:

* That L.D. had lived in a situation of incest for a long period of time;

* That L.D. had attempted to hurt herself, which was common of incest victims;

---

1. In a civil case involving recovered memory of sexual abuse, the Supreme Court said:

 Memory is a multifarious, complex, usually reconstructive process. It does not retrieve information the way a video recorder or computer does. Everything sensed is not stored; recall of picture-perfect images is not automatic. A variety of social, psychological, and de- velopmental factors commonly cause distortions at each stage of the process.... The real possibility of such distortions cannot be overlooked or minimized in determining what relation recalled memories bear to what really happened.

 *S.V. v. R.V.*, 39 Tex.Sup.Ct.J. 386, 398–99 (March 14, 1996).

* That it was common for incest victims to recant soon after disclosure;

* That L.D. was a "sexual partner" with her step-father and replaced her mother;

* That L.D. exhibited symptoms commonly seen in incest victims; and

* That L.D.'s "resignation" was common in children who have been sexually abused for a long time.

The appellant objects that Norton testified to the following matters without objection from his lawyer:

* That she suspected L.D. had been abused by her "behavior patterns," which included gradual withdrawal, lack of eye contact, and low self-esteem.

The testimony of Ginsberg and Norton was their subjective interpretation of symptoms. Their testimony did not rise to the level of expert testimony admissible under Tex. R.Crim.Evid. 702. The Texas Rules of Criminal Evidence are based on the Federal Rules of Evidence. In June 1993, before this case was tried, the United States Supreme Court changed the standard for the admissibility of expert testimony under the Federal Rules in *Daubert*. The Court said:

> [T]he word "knowledge" connotes more than subjective belief or unsupported speculation. The term "applies to any body of known facts or to any body of ideas inferred from such facts or accepted as truths on good grounds."

509 U.S. at 590, 113 S.Ct. at 2795 (citation omitted).

The appellant contends the opinion testimony in this case was inadmissible under *Daubert* because it was subjective rather than factually based. Specifically, the appellant contends the only facts Ginsberg elicited to support her opinion can also be present in children who are not sexually abused, *i.e.*, a resigned and withdrawn attitude, attempts at self-mutilation, and recanting a story.[2]

The majority responds to this argument by stating the well-known standard of review— it is within the trial court's discretion whether to allow a witness to testify as an expert. The majority notes the Court of Criminal Appeals moved in the same direction of interpreting Tex.R.Crim.Evid. 702 as the United States Supreme Court has interpreted Fed. R.Evid. 702 in *Daubert*. *See Jordan v. State*, 928 S.W.2d 550, 553–55 (Tex.Crim.App.1996); *Kelly v. State*, 824 S.W.2d 568, 571–73 (Tex. Crim.App.1992).

In *Jordan* and *Kelly*, the Court of Criminal Appeals addressed the admissibility of scientific evidence. *Jordan*, at 572–574; *Kelly*, 824 S.W.2d at 571–73. The majority holds Ginsberg's testimony in this case was not based on a novel scientific test or theory, but was based on Ginsberg's consultations with L.D. and her 20 years of experience in working with sexually abused children. That misses the point. Even though she had years of experience, her experience is merely anecdotal, and is not supported with any scientific indicia of reliability. The "expert" testimony offered by Ginsberg and Norton would not survive a challenge made by a lawyer familiar with *Daubert*. Unfortunately for the appellant, his lawyer was not familiar with *Daubert*.

The majority admits that, based on *Cohn v. State*, 849 S.W.2d 817, 818–19 (Tex.Crim. App.1993), Ginsberg's testimony was objectionable when it suggested evidence of anxiety behavior is sufficient to indicate sexual abuse. The majority states that the same testimony could have been admitted to show the behavior was consistent with sexual abuse. I disagree. Under *Daubert*, I do not think the testimony would have been admissible even to show the evidence was consistent with sexual abuse. If the appellant's attorney had objected and the court had excluded the testimony of Ginsberg and Norton regarding the connection between L.D.'s symptoms and sexual abuse, it would have

---

**2.** In *S.V. v. R.V.*, the Supreme Court was presented with a case involving symptoms some experts said showed evidence of sexual abuse but which could also be evidence of other problems. In that case, the Court said it would not lower the bar of limitations based on a swearing match between experts over opinions. 39 Tex.Sup.Ct.J. at 397. If such expert testimony does not meet a minimal level to even support a civil suit, it should not contribute to a defendant's conviction.