

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-11-00186-CR

SHANTANIQUA NYKOLE SCOTT                                          APPELLANT

V.

THE STATE OF TEXAS                                                    STATE

----------

FROM THE 372ND DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 1207069D

----------

## MEMORANDUM OPINION[1]

----------

### Introduction

Appellant Shantaniqua Nykole Scott appeals her conviction for serious bodily injury to a child. We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

**Facts**

Appellant's son, R.S., was four months old when he underwent surgery at Cook Children's Hospital to correct gastro-esophageal-reflux disorder. Suspecting that the condition had been caused by abuse, his doctor ordered him placed in a private recovery room equipped with a hidden security camera. After R.S. had been placed in the room, monitors alerted staff that his breathing had stopped. Nurse Laura Gammons and Physician's Assistant Kevin Scully responded and managed to revive him.

A video from the hidden camera shows Appellant holding a blanket over R.S.'s face and placing her hand over his nose and mouth until he stops struggling and goes limp. About thirty seconds later, she leaves the room and calmly tells staff responding to the alert that R.S. had stopped breathing.

Appellant later admitted to police that she had placed her hand over the baby's mouth and nose because she did not want to deal with the stress of having a child any longer.

A grand jury indicted Appellant for serious bodily injury to a child, a petit jury found her guilty and assessed her punishment at twenty-five years' confinement, and the trial court sentenced her accordingly. She brings three issues on appeal.

**Expert Witness**

In her first issue, Appellant claims that the trial court erred by allowing Physician's Assistant Scully to testify that R.S.'s injury presented a "substantial risk of death" from which he "would have died" without medical intervention.

The qualification of a witness as an expert is within the trial court's discretion. *Wyatt v. State*, 23 S.W.3d 18, 27 (Tex. Crim. App. 2000); *Duran v. State*, 163 S.W.3d 253, 258 (Tex. App.—Fort Worth 2005, no pet.). A trial court's decision to permit a witness to testify as an expert will not be disturbed on appeal absent a showing of a clear abuse of discretion. *Wyatt*, 23 S.W.3d at 27; *Duran*, 163 S.W.3d at 258.

Texas Rule of Evidence 702 provides, "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." Tex. R. Evid. 702. No rigid formula exists for determining whether a particular witness is qualified to testify as an expert. *Duran*, 163 S.W.3d at 258. It is almost impossible to lay down any definite guidelines for determining knowledge, skill or experience required in a particular case or of a particular witness. *Id.*; *Rogers v. Gonzales*, 654 S.W.2d 509, 513 (Tex. App.—Corpus Christi 1983, writ ref'd n.r.e.).

Appellant does not cite nor have we found any authority holding that a physician's assistant may not testify as an expert about a serious injury and

corresponding risk of death. To the contrary, rule 702 and the case law provide that experience alone can provide a sufficient basis to qualify a witness as an expert. *Gregory v. State*, 56 S.W.3d 164, 180 (Tex. App.—Houston [14th Dist] 2001, pet. dism'd), *cert. denied*, 538 U.S. 978 (2003); *see also Duran*, 163 S.W.3d at 258. Nothing in rule 702 requires that a witness have a particular degree in order to qualify as an expert. *See Gregory*, 56 S.W.3d at 179–80. ("A medical license or degree is not the litmus test for qualification as an expert.").

In similar fact patterns, this court and others have found that nurses and other medical professionals may qualify as experts. *See, e.g., Duran*, 163 S.W.3d at 258–59; *Frohne v. State*, 928 S.W.2d 570, 576 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd), *cert. denied*, 522 U.S. 812 (1997). In deciding an ineffective-assistance-of-counsel claim in *Frohne*, our sister court held that because a pediatric nurse's suspicions of abuse were based on her education, training, and experience, the appellant failed to show that an objection to the nurse's testimony on the basis that she was not qualified as an expert would have been sustained. 928 S.W.2d at 576. And in *Butler v. State*, another sister court held that the trial court did not abuse its discretion by allowing a nurse with "extensive specialized training in the field of child abuse" and a clinical supervisor with a master's degree in counseling and seventeen years' experience dealing with child abuse, to testify as experts. 892 S.W.2d 138, 140 (Tex. App.—Texarkana 1994, no pet.).

In this case, Scully was a licensed physician's assistant for surgical services at Cook Children's Hospital and had worked there for four years. His duties included taking admission history, administering assessments and physical examinations, assisting surgeons in the operating room, answering calls from nurses, modifying medications and making medical decisions based on laboratory data and patient assessment. He testified that he holds two bachelor's degrees from the University of Texas and the Air Force, a master's degree in medicine from the University of Nebraska, and that he served one tour of duty in Iraq as a medical officer. Based on the evidence of Scully's education and experience, we hold that the trial court did not abuse its discretion by allowing him to give testimony as an expert that R.S. was at "substantial risk of death" from which he "would have died" without medical intervention.

Further, the trial court's admission of Scully's opinion testimony is harmless because there was ample other evidence that R.S. suffered serious bodily injury. The jury saw the videotape and easily could have inferred that R.S. was at a substantial risk of death from watching Appellant smother him. And Nurse Gammons testified that when she entered the baby's room, it appeared that he was not breathing. Moreover, Dr. Sami Hadeed, the pediatric pulmonologist who had treated R.S., testified that the baby was not breathing and was at a substantial risk of death. We overrule Appellant's first issue.

**Lesser-Included-Offense Instruction**

5

In her second issue, Appellant argues that the trial court erred by failing to charge the jury with the lesser-included offense of injury to a child.

We use a two-step analysis to determine whether an appellant was entitled to a lesser-included-offense instruction. *Hall v. State*, 225 S.W.3d 524, 528 (Tex. Crim. App. 2007); *Rousseau v. State*, 855 S.W.2d 666, 672–73 (Tex. Crim. App.), *cert. denied*, 510 U.S. 919 (1993). First, the lesser offense must come within article 37.09 of the code of criminal procedure. Tex. Code Crim. Proc. Ann. art. 37.09 (West 2006); *Moore v. State*, 969 S.W.2d 4, 8 (Tex. Crim. App. 1998). An offense is a lesser included offense if it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission. Tex. Code Crim. Proc. Ann. art. 37.09(2).

A person commits bodily injury to a child by intentionally, knowingly, recklessly, or with criminal negligence causing bodily injury to a child. Tex. Penal Code Ann. § 22.04(a)(3) (West Supp. 2013). A person commits serious bodily injury to a child by intentionally, knowingly, recklessly, or with criminal negligence causing serious bodily injury to a child. *Id.* § 22.04(a)(1). "Bodily injury" is "physical pain, illness, or any impairment of physical condition." *Id.* § 1.07(8) (West Supp. 2013). "Serious bodily injury" means bodily injury "that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Id.* § 1.07(46). Because bodily injury to a child differs from serious bodily injury to

6

a child only in the respect that a less serious injury suffices to establish its commission, the first step of the analysis is met.

Under the second step, some evidence must exist in the record that would permit a jury to rationally find that if the appellant is guilty, he is guilty only of the lesser offense. *Hall*, 225 S.W.3d at 536; *Salinas v. State*, 163 S.W.3d 734, 741 (Tex. Crim. App. 2005); *Rousseau*, 855 S.W.2d at 672–73. The evidence must be evaluated in the context of the entire record. *Moore*, 969 S.W.2d at 8. There must be some evidence from which a rational jury could acquit the appellant of the greater offense while convicting him of the lesser-included offense. *Id.* The court may not consider whether the evidence is credible, controverted, or in conflict with other evidence. *Id.* Anything more than a scintilla of evidence may be sufficient to entitle a defendant to a lesser charge. *Hall*, 225 S.W.3d at 536.

Appellant relies on the following exchange between defense counsel and Dr. Hadeed to argue that a rational jury could have found Appellant guilty only of bodily injury to a child but not serious bodily injury to a child:

> Q. So—and from what I've been able to determine—and see if you agree with this—four to five minutes is usually when there starts being a real risk of death, a cutoff of oxygen—a complete cutoff of oxygen, is that—would you agree with that?
>
> A. Partially.
>
> Q. Okay. What part wouldn't you agree with?
>
> A. If any healthy individual four to five minute [sic] is that, you're correct. But if somebody who already has some abnormality in the blood, like I—if the—if their blood is a little bit more acidy, if there—if there's some other condition, can accelerate that process.

7

We disagree that a rational juror could conclude from this discussion about a hypothetically healthy individual's ability to survive a certain period without oxygen, that R.S.—a baby who had been smothered until he lost consciousness and stopped breathing—had not been placed at a substantial risk of death. Moreover, we find nothing in the record from which a rational juror could conclude that if Appellant was guilty of anything, she was guilty of only injury to a child and not serious bodily injury to a child. Accordingly, we hold that the trial court did not err by refusing to charge the jury on the lesser-included offense of injury to a child, and we overrule Appellant's second issue.

**Jury Argument**

In her third issue, Appellant argues that the trial court erred by overruling her objection to the State's closing argument during the punishment phase of the trial.

During the punishment phase, the jury learned that Appellant had admitted that she had suffocated R.S. several times before the incidents recorded on video at the hospital. Medical records showed additional instances where R.S. was reported to have stopped breathing and that he had not had any further incidents since being placed in foster care. Appellant's mother testified on Appellant's behalf that Appellant was still R.S.'s mother and that she was fighting to keep her parental rights. She believed that Appellant should be able to regain custody of R.S. after she gets "the full kind of help that she needs."

8

During her final argument, Appellant brought up the issue of custody. Her counsel reminded the jury that "this isn't a child custody battle" and that the jury could not decide who gets custody. Then he explained,

> This is a case on whether she—and—and she is not going to get custody as—if—if you give her probation or you give her a short sentence. She—if she ever gets custody of another child, it's going to be because she's proven herself to be trustworthy enough that people will trust her, because she showed she wasn't trustworthy. And that's it. Her mother says no, everybody says no, you've shown yourself not to be trustworthy taking a [sic] care of kid [sic]; until you––you show us something different, we're not going to let you. And even then maybe not.

The State responded to Appellant's references to custody in its closing argument:

> And think of [R.S.] when he first got to [his foster mother]. She sits him up and when she puts a onesie on him, a shirt over him, he's fine. But put him on his back and what does he do? He screams. He kicks. He reaches for her hand to push her away. The only way that you can make sure she doesn't get [R.S.] back is to send her to prison because—
>
> [DEFENSE COUNSEL]: I object to this. This is not a proper plea for law enforcement.
>
> THE COURT: And I will say that's a decision made by another court action. I'll sustain that objection. Your job isn't [sic] to render a fair decision on the facts of this case, not on the custody of the child. Does everyone understand the difference?
>
> SEVERAL JURY MEMBERS: Yes.
>
> THE COURT: All right.
>
> [THE STATE]: Thank you, Judge.
>
> What we're asking you to do, she has forfeited the privilege to have any other kids to have to take care of. How can you trust her?

9

If she gets a slap on the wrist and gets out, then we have to read about another kid that's been hurt. It's going to be a sad day. She has proven every time she has suffocated this helpless kid that she can't be trusted. And he can't turn his head away. He can't shout for help. He can't grab her hand and shove it away. He's quite frankly helpless and dependent upon the one person who was caring for him, but she couldn't do it.

. . . .

Make sure she stays in prison long enough where she can't have any more children. She has absolutely forfeited that privilege. I will leave the math to you, but make sure no other kids can get hurt.

[DEFENSE COUNSEL]: I object. This is not a proper plea for law enforcement.

THE COURT: Overruled.

[THE STATE]: Absolutely this is a plea for law enforcement. Don't give her the chance. Send her to prison and make it a long time.

There are four permissible areas of jury argument: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answers to argument of opposing counsel; and (4) pleas for law enforcement. *Felder v. State*, 848 S.W.2d 85, 94–95 (Tex. Crim. App. 1992), *cert. denied*, 510 U.S. 829 (1993); *Alejandro v. State*, 493 S.W.2d 230, 231 (Tex. Crim. App. 1973).

Appellant complains that the following remark was improper because it argued for the jury to deprive her of her fundamental right to procreate: "Make sure she stays in prison long enough where she can't have any more children. She has absolutely forfeited that privilege. I will leave the math to you, but make sure no other kids can get hurt."

10

Generally, in order to preserve jury argument error, a timely objection must be made and an adverse ruling obtained. Tex. R. App. P. 33.1; *Staten v. State*, 919 S.W.2d 493, 499 (Tex. App.—Fort Worth 1996, pet. ref'd). Absent an objection to jury argument at trial, nothing is presented for review. *Threadgill v. State*, 146 S.W.3d 654, 667 (Tex. Crim. App. 2004); *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996), *cert. denied*, 520 U.S. 1173 (1997). The objection must be timely and specific, and the defendant must pursue the objection to an adverse ruling. *Mathis v. State*, 67 S.W.3d 918, 927 (Tex. Crim. App. 2002); *Cockrell*, 933 S.W.2d at 89; *Carter v. State*, 614 S.W.2d 821, 823 (Tex. Crim. App. [Panel Op.] 1981); *see also* Tex. R. App. P. 33.1(a)(1). An objection is timely if it is made as soon as the ground of objection becomes apparent. *Thompson v. State*, 691 S.W.2d 627, 634 (Tex. Crim. App. 1984), *cert. denied*, 474 U.S. 865 (1985).

Before making the remark to which Appellant objected and of which she now complains, the State argued:

> What we're asking you to do, *she has forfeited the privilege to have any other kids to have to take care of*. How can you trust her? If she gets a slap on the wrist and gets out, then we have to read about another kid that's been hurt. It's going to be a sad day. [Emphasis added.]

Appellant did not object to this remark. In substance, though, it is essentially the same as that of which she later complained. By not objecting when the argument was first raised, she has failed to preserve her complaint for review. Tex. R. App. P. 33.1(a)(1); *See Thompson*, 691 S.W.2d at 635.

11

Further, a complaint on appeal must comport with the complaint made in the trial court or the error is forfeited. *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012); *Lovill v. State*, 319 S.W.3d 687, 691–92 (Tex. Crim. App. 2009) ("A complaint will not be preserved if the legal basis of the complaint raised on appeal varies from the complaint made at trial."); *Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009) ("Whether a party's particular complaint is preserved depends on whether the complaint on appeal comports with the complaint made at trial."). To determine whether the complaint on appeal comports with that made at trial, we consider the context in which the complaint was made and the parties' shared understanding at that time. *Clark*, 365 S.W.3d at 339; *Resendez v. State*, 306 S.W.3d 308, 313 (Tex. Crim. App. 2009); *Pena*, 285 S.W.3d at 464.

To the extent to which Appellant now complains that the trial court erred by allowing the State to appeal to the jury to deprive Appellant of her fundamental right to procreate, that argument does not comport with the objection Appellant raised at trial. There, she merely argued without elaboration that the State's remark was not a proper plea for law enforcement. In her brief, however, she expounds on United States Supreme Court case law and eugenics. That argument was not presented to the trial court and will not be heard for the first time on appeal. *See Clark*, 365 S.W.3d at 339; *Agbogwe v. State*, 414 S.W.3d 820, 828–29 (Tex. App.—Houston [1st Dist.] 2013, no pet.); *Moreno v. State*, 195 S.W.3d 321, 328–29 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd).

12

Moreover, the State's argument was a proper response to remarks Appellant made during her own closing argument. A defendant in criminal proceedings may not complain of improper argument by the prosecuting attorney if the argument was invited or provoked by the argument of the defense. *See, e.g., White v. State*, 618 S.W.2d 65, 67 (Tex. Crim. App. [Panel Op.] 1981). Thus, a remark by the prosecuting attorney that is invited or provoked by the argument of the opposing counsel is not erroneous even if the remark refers to a matter outside the evidence or record. *Johnson v. State*, 147 S.W.2d 811, 814 (Tex. Crim. App. 1941).

Appellant's counsel made the following point during closing argument:

> . . . and this isn't a child custody battle. Y'all—y'all can't decide who gets custody if you wanted to. This is a case on whether she—and—and she is not going to get custody as—if—if you give her probation or you give her a short sentence. She—if she ever gets custody of another child, it's going to be because she's proven herself to be trustworthy enough that people will trust her, because she showed she wasn't trustworthy.

This argument implies that the jury should not consider the danger to R.S. or another child if it decides to recommend probation or assess a short prison sentence. The remark reasonably invited the State's response that the jury should consider the future dangerousness of Appellant not only to R.S., but to any child she might have in the future. Thus, the State's argument was not improper.

Finally, any error is harmless. Improper jury argument is reviewed under a nonconstitutional harm analysis under rule 44.2(b) of the Texas Rules of

13

Appellate Procedure, and must be disregarded unless it affected Appellant's substantial rights. Tex. R. App. P. 44.2(b); *see Threadgill*, 146 S.W.3d at 666; *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied*, 526 U.S. 1070 (1999). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)). Conversely, an error does not affect a substantial right if we have "fair assurance that the error did not influence the jury, or had but a slight effect." *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001).

In determining whether the appellant's substantial rights were affected, we consider (1) the severity of the misconduct (i.e., the prejudicial effect of the prosecutor's remarks); (2) curative measures; and (3) the certainty of the punishment assessed absent the misconduct. *See Martinez v. State*, 17 S.W.3d 677, 692–93 (Tex. Crim. App. 2000); *Mosley*, 983 S.W.2d at 259.

Given Appellant's argument that custody of R.S. was not an issue, the prosecutor's remark reasonably could be read as the State's response that the jury should consider Appellant's future dangerousness not only to R.S., but also to any child she might someday have. This consideration was already on the minds of the jurors given the seriousness of the crime, the manner in which it was committed, and the other arguments of counsel for both sides. Therefore, the remark prejudiced Appellant very little, if at all. As to the second factor, the

trial court gave no curative instruction since it overruled Appellant's objection. But the third factor weighs heavily in favor of the State. Appellant was caught on camera committing the crime, admitted after the fact that she did not want the stress of having a child, and was sentenced to 25 out of a possible 99 years' confinement. *See* Tex. Penal Code Ann. §§ 12.32(a), 22.04(e) (West Supp. 2013).

We conclude that, in the context of the entire case against Appellant, even if the trial court erred by overruling Appellant's objection to the State's argument, any error would not have had a substantial or injurious effect on the jury's verdict and would not have affected Appellant's substantial rights. *See King*, 953 S.W.2d at 271. We overrule Appellant's third issue.

## Conclusion

Having overruled each of Appellant's three issues, we affirm the trial court's judgment.

/s/ Anne Gardner
ANNE GARDNER
JUSTICE

PANEL: LIVINGSTON, C.J.; DAUPHINOT and GARDNER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: July 17, 2014