**Glenn Gordon GREGORY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 14–99–01125–CR to 14–99–01128–CR.**

Court of Appeals of Texas, Houston (14th Dist.).

July 5, 2001.

Rehearing Overruled Sept. 13, 2001.

Greg Glass, Herb H. Ritchie, Houston, for appellant.

Kelly Ann Smith, Houston, for appellee.

Panel consists of Justices YATES, WITTIG, and FROST.

## MAJORITY OPINION

FROST, Justice.

Appellant, Glenn Gordon Gregory, appeals four convictions for indecency with a child, consolidated and tried together. We affirm.

### I. FACTUAL AND PROCEDURAL HISTORY

Appellant, Glenn Gordon Gregory, was accused by his granddaughter (L.G., age 11), his step-granddaughter (S.S., age 9), and a neighbor (M.A., age 11) of inappropriate sex acts, alleged to have occurred in March 1997. His granddaughter complained that appellant had touched her breasts and her genitals. His step-granddaughter complained that appellant rubbed his penis on her vagina and had other inappropriate sexual contact with her. His granddaughter and the neighbor further complained that appellant exposed his penis to them while at his house on Easter weekend in 1997.

Appellant denied all the charges, except for the exposure to his granddaughter and neighbor, which he maintained was an unintentional exposure in which his penis was visible to them through a hole in his shorts. Appellant claimed the incident occurred while he was drinking and that when he realized the problem, he immediately turned himself around to rectify the situation.

In April 1997, the police investigated the allegations of appellant's granddaughter. At that time, no determination was made as to their merit because appellant's step-granddaughter failed to corroborate the granddaughter's account and denied appellant had done anything improper to her. Later, appellant's step-granddaughter accused both her stepfather and appellant of sexual abuse, but subsequently determined that only appellant had sexually abused her and that she had merely dreamed her stepfather had. All three girls gave similar accounts of the Easter weekend incident where appellant's penis was exposed to them through his shorts. Appellant's granddaughter and the neighbor claimed that when the exposed penis was called to appellant's attention, he pulled it out further.

During the course of the investigation, appellant participated in an interview conducted by a Houston police officer (Julie Anderson) at the Children's Assessment Center. Following the interview, appellant was charged with the felony offenses of (1) indecency with a child by exposing himself (in two indictments); (2) aggravated sexual assault of a child; and (3) indecency with a child by sexual contact. In response to appellant's motion to consolidate, the trial court consolidated all four cases for trial to one jury. The jury convicted appellant of two offenses of indecency with a child by exposing himself and two offenses of indecency with a child by sexual contact.[1] The jury assessed punish-

---

1. The State was unable to prove aggravated sexual assault, and appellant was convicted on a lesser included offense of indecency with a child by sexual contact.

ment at confinement in the Institutional Division of the Texas Department of Criminal Justice for ten years for the indecency with a child by sexual contact offenses and at confinement for five years plus a $2,500 fine for the indecency with a child by exposure offenses. The trial court ordered all sentences to run concurrently.

## II. Issues Presented for Review

Appellant challenges his conviction by raising nine points of error. In the first four, he claims the trial court erred in (1) denying his motion for mistrial after an investigating officer testified that she offered appellant a polygraph test; (2) admitting into evidence a videotaped interview of appellant; (3) overruling appellant's objections to admission of extraneous offenses based on the State's purported failure to provide proper notice; and (4) allowing S.S.'s mother to testify as to S.S.'s outcry statement. In his fifth through seventh points of error, appellant complains the evidence is legally and factually insufficient to establish any "intent to arouse and gratify," an essential element of each of the charged offenses. In his eighth and ninth points of error, appellant complains the trial court erred in overruling his objections to the testimony of a nurse the State called as an expert because (1) the witness lacked the qualifications to render expert testimony, and (2) the testimony was inadmissible hearsay.

**2.** Appellant's fifth point of error asserts that the trial court erred in denying appellant's motion for instructed verdicts as to all four of the indecency cases because the State failed to prove the intent element. An appeal from denial of an instructed verdict challenges the legal sufficiency of the evidence to support a conviction. *Dunn v. State*, 951 S.W.2d 478, 480 (Tex.Crim.App.1997).

## III. Legal and Factual Sufficiency

■ We begin by addressing appellant's fifth through seventh points of error, in which he complains that the evidence was legally and factually insufficient to support a conviction for indecency with a child as to the element of "intent to arouse or gratify ·the sexual desire" of appellant.[2]

■ In reviewing the legal sufficiency of the evidence, we view the evidence in the light most favorable to the verdict and decide whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Wilson v. State*, 7 S.W.3d 136, 141 (Tex. Crim.App.1999) (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). We accord great deference " 'to the responsibility of the trier of fact [to fairly] resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.' " *Clewis v. State*, 922 S.W.2d 126, 133 (Tex.Crim.App.1996) (quoting *Jackson*, 443 U.S. at 319, 99 S.Ct. 2781). We presume that any conflicting inferences from the evidence were resolved by the jury in favor of the prosecution, and we defer to that resolution. *Id.* n. 13, 99 S.Ct. 2781 (citing *Jackson*, 443 U.S. at 326, 99 S.Ct. 2781). In our review, we determine only whether " 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *King v. State*, 29 S.W.3d 556, 562 (Tex.Crim.App.2000) (quoting *Jackson*, 443 U.S. at 319, 99 S.Ct. 2781).

Appellant complains in his sixth point of error that the trial court erred in overruling appellant's objections to the court's charge because in the indecency with a child by exposure cases there was no evidence of intent to arouse or gratify. This complaint is subsumed within appellant's legal sufficiency challenge, as to intent, for each of the indecency cases, and thus will be addressed in response to those points.

■ The elements of indecency with a child are either: (1) engaging in sexual contact[3] with a child under seventeen years and not his spouse; or (2)(a) exposing the anus or any part of the genitals, (b) *with the intent to arouse or gratify the sexual desire of any person,* and (c) knowing that a child under seventeen years, and not his spouse, is present. TEX. PEN.CODE ANN. § 21.11(a) (Vernon Supp.2001). Appellant complains only about sufficiency of the evidence as to the intent element for both categories of indecency. Arguing there was no evidence he "was sexually aroused or gratifying his sexual desire when he allegedly did the acts complained of and set out in the indictments," appellant points to the following: (1) L.G. could not recall what appellant's "private" was like; (2) there was no evidence appellant's penis was ever erect, that appellant masturbated or that he ejaculated during any of the alleged encounters; (3) S.S. testified appellant's penis "felt soft" when appellant rubbed it on her "private"; (4) it is more likely than not that appellant's "alleged conduct was induced to satisfy needs other than sexual desire or gratification, *e.g.,* the need to dominate or gratify others;" and (5) the uncontradicted evidence established that appellant was 61 years old, married, had a normal sex life with his wife, and neither found children sexy nor considered himself sexy to eight, nine, or ten-year old girls.

■ The requisite specific intent to arouse or gratify the sexual desire of a person can be inferred from conduct, remarks, or all the surrounding circumstances. *Robertson v. State,* 871 S.W.2d 701, 705 (Tex.Crim.App.1993). An oral expression of intent is not required. *C.F. v. State,* 897 S.W.2d 464, 472 (Tex.App.—El Paso 1995, no pet.). Nor is there a requirement that a male offender's penis be erect. *Barker v. State,* 931 S.W.2d 344, 346–47 (Tex.App.—Fort Worth 1996, pet. ref'd).

L.G. testified that the sexual contact with appellant began when she was in the third grade. She recounted how appellant (1) touched her breasts and genitals, underneath her clothing; (2) asked her to touch his naked genitals, though she did not recall what they looked like; (3) asked her to dance naked, which she did; and (4) told her she should not tell anyone of these events. L.G. and M.A. both observed appellant's exposed penis while they were inside his house, and when the girls called the matter to his attention, appellant pulled his penis out further.

S.S. testified that appellant woke her up at night, pulled down her underwear, and rubbed his penis on her vagina. This sexual activity occurred throughout the house and sometimes while appellant was unclothed. S.S. explained how appellant "took his private and put it in mine a little bit and rubbed it." She initially told no one about these incidents because appellant threatened her, and she feared getting into trouble.

Appellant initially told Officer Anderson that he had never exposed himself to L.G. and M.A., but, at trial, admitted that he had exposed himself, inadvertently. He testified that he did not intentionally touch L.G.'s vagina, but that while lying with her on a couch, she moved his hand down into her pants.

From this testimony, the jury could have inferred that appellant touched or exposed himself to the victims for his own sexual gratification or arousal. *See Brown*

---

**3.** " 'Sexual contact' means any touching of the anus, breast, or any part of the genitals of another person *with intent to arouse or gratify* the sexual desire of any person." TEX. PEN. CODE ANN. § 21.01(2) (Vernon Supp.2001) (emphasis added).

*v. State,* 871 S.W.2d 852, 856 (Tex.App.—Corpus Christi 1994, pet. ref'd). That appellant instructed the children not to reveal the events to anyone shows a consciousness of wrongdoing, which, in turn, leads to an inference that when he touched or exposed himself to children as he did, appellant harbored a specific intent to arouse and gratify his own sexual desire. *See Montgomery v. State,* 810 S.W.2d 372, 396 (Tex.Crim.App.1990).

■ Moreover, to the extent the girls' testimony contradicts that of appellant's, the jury as the trier of fact, had the ultimate authority on the credibility of witnesses and the weight to be given to their testimony. *See* Tex.Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); *Burks v. State,* 876 S.W.2d 877, 909 (Tex.Crim.App.1994). Any inconsistencies in the testimony should be resolved in favor of the jury's verdict in a legal sufficiency review. *Johnson v. State,* 815 S.W.2d 707, 712–13 (Tex.Crim.App.1991) (citing *Moreno v. State,* 755 S.W.2d 866, 867 (Tex.Crim.App. 1988)). Viewing the evidence under our deferential standard, we conclude that a rational trier of fact could have found, beyond a reasonable doubt, that appellant committed the indecency acts with the specific intent to arouse or gratify his sexual desires.

■ In reviewing evidence for factual sufficiency, we do not view the evidence in the light most favorable to the prosecution. *Clewis v. State,* 922 S.W.2d 126, 134 (Tex.Crim.App.1996). Instead, we consider all the evidence and set aside the verdict "only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Id.* However, appellate courts "are not free to reweigh the evidence and set aside a jury verdict merely because the judges feel that a different result is more reasonable." *Id.* at 135 (citations omitted). In other words,

we will not substitute our judgment for that of the jury. *Id.* at 133. To find the evidence factually insufficient to support a verdict, we must conclude that the jury's finding is manifestly unjust, shocks the conscience, or clearly demonstrates bias. *Id.* at 135.

Viewed as a whole, the evidence amply supports the jury's finding that appellant acted with the requisite intent to arouse or gratify. Accordingly, we find the evidence in this case factually sufficient to establish the requisite intent for the offenses charged.

We overrule appellant's fifth through seventh points of error.

## IV. Polygraph Reference

■ In his first point of error, appellant complains that the trial court erred in denying his motion for mistrial after Officer Julie Anderson, a child abuse investigator, testified that she asked appellant if he wanted to take a polygraph test during their interview at the Children's Assessment Center on January 26, 1999. Defense counsel objected to the polygraph reference, requested an instruction to disregard, and moved for a mistrial. The trial court sustained the objection and twice instructed the jury to disregard the testimony and to not consider it for any purpose. The trial court denied the motion for mistrial. The record reflects the following exchange:

DEFENSE COUNSEL: Well, you talked to the parties or the complainants, and then did you go to the D.A.'s office?

OFFICER ANDERSON: No. Actually I had asked the defendant if he wanted to take a polygraph.

DEFENSE COUNSEL: Well, you've been a police officer for 17 years, haven't you? Your Honor, I'm going to

object to her volunteering that. That's improper. She knows that. And ask you to please instruct this jury—I object. It's nonresponsive, it's improper. And would you, please, instruct this jury to disregard?

COURT: Objection sustained. Members of the jury, do not consider the answer, the comment of the witness for any purpose whatsoever in this trial. It is totally something that you should not have any consideration on in this particular case or any of these four cases that you are hearing.

DEFENSE COUNSEL: Thank you, Your Honor. Your Honor, at this time we would move for a mistrial.

COURT: That is denied. Once again, members of the jury, I want to reiterate the importance that you disregard the statement of the witness. It was not responsive to any question ... [defense counsel] asked. Do not consider it at all. Go ahead.

Appellant argues that the trial court erred in failing to grant a mistrial because (1) the officer's testimony was a "clear implication [appellant] either failed or refused," the polygraph exam; (2) no instruction could cure the officer's comment; and (3) the comment represents an extreme example of a deliberate and calculated injection of inadmissible polygraph evidence to prejudice the appellant and bolster the complainants' credibility.

■ Because of their inherent unreliability and tendency to be unduly persuasive, polygraph examination *results* are inadmissible for any purpose in a criminal proceeding on proper objection. *Marcum v. State*, 983 S.W.2d 762, 765 (Tex.App.—

Houston [14th Dist.] 1998, pet. ref'd) (citing *Shiflet v. State*, 732 S.W.2d 622, 630 (Tex.Crim.App.1985)). However, the mere mention of a polygraph examination does not automatically constitute reversible error. *Id.*

■ In *Barker v. State*, the First Court of Appeals stated that there was no error in failing to grant a mistrial when an officer commented, in a nonresponsive answer to defense counsel's question, that the defendant had been offered a polygraph exam. 740 S.W.2d 579, 583 (Tex. App.—Houston [1st Dist.] 1987, no pet.). Appellant argues that the *Barker* court's statement was mere *dicta*, and thus not controlling, because it was unnecessary in view of the court's holding that error was not preserved where no objection was made to the officer's mention of the offer. *See id.* Appellant argues, instead, that this case comes squarely within the rationale and holding of another opinion of the First Court of Appeals, *Kugler v. State*, in which that court found reversible error based on statements regarding a polygraph examination. *See* 902 S.W.2d 594 (Tex.App.—Houston [1st Dist.] 1995, pet. ref'd). However, in *Kugler*, the nonresponsive answer forming the basis of the complaint disclosed that the defendant had been *offered* a polygraph test and that he had *refused* to take one. *Id.* at 595. Here, the testimony revealed only that appellant was *offered* a polygraph test and did not disclose whether appellant refused the offer. Where a witness gives a nonresponsive answer that mentions a polygraph test was *offered* or *taken*, but does not mention the *results* of the test, there is no error in failing to grant a mistrial.[4] An

---

4. *See, e.g., Hannon v. State*, 475 S.W.2d 800, 803 (Tex.Crim.App.1972) (no error where witness gave nonresponsive answer that indicated he had been put on a lie detector machine); *Roper v. State*, 375 S.W.2d 454, 457 (Tex.Crim.App.1964) (no error where officer disclosed that defendant had been given a polygraph exam where answer was nonresponsive and did not reflect the result of the test); and *Richardson v. State*, 823 S.W.2d

instruction to disregard the answer is generally sufficient to reduce any prejudicial effect the answer might have had in the minds of the jurors. *Kugler,* 902 S.W.2d at 595. Because Officer Anderson's nonresponsive comment did not reveal whether appellant submitted to a polygraph exam, much less the results, if any, the trial court's two immediate instructions to disregard the reference were sufficient to cure any error.

Appellant's first point of error is overruled.

## V. ADMISSION OF VIDEOTAPED INTERVIEW

During trial, the court admitted into evidence appellant's pre-arrest videotape made during the interview with Officer Anderson at the Children's Assessment Center. In his second issue, appellant contends the trial court erred in allowing this videotape into evidence. Specifically, appellant complains he did not voluntarily make the statements in the videotape because (1) he made them during a custodial interrogation without the warnings required by the Texas Code of Criminal Procedure, article 38.22, sections 2 and 3, and the United States Supreme Court; and (2) he had been drinking before the interview. *See* TEX.CODE CRIM. PROC. ANN. art. 38.22, §§ 2–3 (Vernon 1979 & Supp. 2001); *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

■ If statements do not derive from custodial interrogation, the requirements of *Miranda* and article 38.22 do not apply. *Holland v. State,* 770 S.W.2d 56, 58 (Tex. App.—Austin 1989), *aff'd,* 802 S.W.2d 696 (Tex.Crim.App.1991). A non-custodial, voluntary, oral statement is admissible at trial. TEX.CODE CRIM. PROC. ANN. art. 38.22,

§ 5. Thus, we must examine whether appellant was "in custody" when he made the statements and whether he made them voluntarily.

■ The United States Supreme Court has defined custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda,* 384 U.S. at 474, 86 S.Ct. 1602. A person is "in custody" only if, under the circumstances, a reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest. *Dowthitt v. State,* 931 S.W.2d 244, 254 (Tex.Crim. App.1996). The "reasonable person" standard presupposes an innocent person. *Id.* (citing *Florida v. Bostick,* 501 U.S. 429, 438, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991)).

■ A court determines whether a suspect is "in custody" on a case-by-case basis. *Id.* In making this determination, the court considers whether (1) an officer had probable cause to arrest a suspect and did not tell him that he was free to leave; (2) the officer manifested this knowledge to the suspect; and (3) a reasonable person in the suspect's position would have believed he was under restraint to the degree associated with an arrest. *Guardiola v. State,* 20 S.W.3d 216, 222 (Tex.App.—Houston [14th Dist.] 2000, pet. ref'd). Ultimately, a person is under custodial interrogation if a reasonable person in similar circumstances would believe his freedom of movement was restricted to the level associated with a formal arrest. *Dowthitt,* 931 S.W.2d at 254 (citation omitted). However, a formal arrest is not required. *Zavala v. State,*

710, 712 (Tex.App.—San Antonio 1992, pet. ref'd) (no error where officer disclosed in a nonresponsive answer to prosecutor's ques-

tion that defendant submitted to polygraph exam).

956 S.W.2d 715, 723 (Tex.App.—Corpus Christi 1997, no pet.).

Officer Anderson invited appellant to meet with her for an interview regarding the complainants' allegations. She phoned appellant and arranged an interview time to discuss the allegations against him. She conducted the interview in the "suspect interrogation room" of the Children's Assessment Center. She informed appellant that he was a suspect but that he was not under arrest. She twice told him that he was free to leave at any time. Officer Anderson did not place appellant under arrest and had no plans to do so. Under these circumstances, a reasonable person would not feel restrained to the degree of a formal arrest. Accordingly, we find that appellant was not "in custody" and that neither statutory nor *Miranda* warnings were required.

■ Appellant further argues that he was intoxicated at the time he made his statement and, therefore, his confession could not have been voluntary. The State argues that appellant did not raise the voluntariness of his statement in the trial court, in the context of article 38.22. The record shows otherwise. When the State offered the videotape into evidence, appellant objected "under 38.22 on voluntariness." Defense counsel further asserted "there's a question of his voluntariness ... his not appreciating the circumstances under which he found himself there .... it was apparent that he had been under the influence of alcoholic beverage." Even though the defendant neither testifies nor offers any evidence on the voluntariness of a statement or confession, a trial objection by defense counsel is sufficient to raise the issue and it is error for the trial court not to resolve that issue. *Wicker v. State*, 740 S.W.2d 779, 782 (Tex.Crim.App.1987). We find appellant sufficiently raised the voluntariness issue at trial and thus preserved it for our review.

■ In addressing the voluntariness of appellant's videotaped statement, we begin by noting that intoxication, while relevant, does not render a confession involuntary *per se*. *Jones v. State*, 944 S.W.2d 642, 651 (Tex.Crim.App.1996). Rather, it is a factor the court must consider in making its evaluation. Specifically, the court must determine whether the defendant's intoxication rendered him incapable of making an independent, informed decision to confess. *Id.* Here, appellant's evidence as to intoxication consists of the testimony of Officer Anderson that she knew appellant had been drinking before the interview. However, Officer Anderson also testified that appellant did not appear to be intoxicated. We do not find any evidence that appellant's drinking rendered him incapable of making a voluntary decision to give the videotaped statement to Officer Anderson.

Based on the totality of the surrounding circumstances, we find the trial court did not err by overruling appellant's objection and admitting the videotaped interview into evidence.

Appellant's second point of error is overruled.

## VI. EXTRANEOUS OFFENSES

In his third point of error, appellant complains the trial court erred in overruling his objection to the admission of extraneous offenses because the State's written notice of intent to use extraneous offenses was inadequate under article 38.37, and thus failed to provide appellant proper notice. Appellant points to two deficiencies in the State's notice, arguing it fails to (1) give specific dates for the charged offenses and (2) mention specific extraneous of-

fenses which the State included in its oral proffer to the trial court.

■ To have preserved error for the first purported deficiency, appellant would have to have made a timely, specific objection in the trial court. *See* Tex.R.App. P. 33.1. Appellant did not object at trial to the range of dates provided in the State's notice of extraneous offenses. Therefore, any error has been waived. *See id.*

■ Appellant also complains that "nowhere in the written notice is there any mention of the alleged extraneous offenses of appellant's having [L.G.] 'touch him on the penis' or that he 'would tell her to touch it.' Nor is there any mention in the notice that appellant 'French kissed [L.G.].'" Again, appellant did not make these complaints to the State's proffer of extraneous offenses. Based on appellant's failure to voice his complaints in the trial court, we again find appellant failed to preserve these complaints for our review. *See* Tex.R.App. P. 33.1; *Thompson v. State*, 4 S.W.3d 884, 887 (Tex.App.—Houston [1st Dist.] 1999, pet. ref'd) (finding appellant failed to preserve objections to extraneous offense notice under Texas Rules of Evidence 403 and 404 and article 37.07 because these were general objections which did not apprise the trial court of the basis of his complaint other than lack of notice).

■ Appellant also complains "there is no mention in the written notice that 'Appellant would "French kiss" [L.G.] in the presence of [S.S.].'" Unlike his other complaints to the admission of extraneous offense evidence, appellant arguably communicated the basis of this specific complaint after the State's proffer. The record contains the following exchange:

Defense counsel: Well, I'll—Your Honor, yes, we'll object generally to all of these extraneous offenses under rule 403(b), 404(a) and (b). I'm in a quandary to try and find *the notice we had received that this conduct or the specific conduct that the prosecution is referring to when SS, when LG was over there. I don't see that I have notice of that.*

State: I don't think I'm required to give him notice who was present for each of these offenses. I think I am to give him legal notice of the offense that I believe I can prove to the jury, not who was present for all of it.

Defense Counsel: I'm not fussing with that, Judge. *I'm just saying that she's giving me instances with [S.S.] of some five instances under the extraneous notification and I didn't see any that seem to comport with her description at that time.*[5]

These objections to the State's notice regarding incidents in which both S.S. and L.G. were present seem to refer to the State's proffer, minutes earlier, that S.S. "observed the defendant French kissing [L.G.]" and "observed the defendant touching LG ... in SS's bedroom...." Assuming appellant preserved this complaint for review, we find it lacks merit.

■ Texas Rule of Evidence 404(b)'s requirement that the State give a defendant reasonable notice before trial of its intention to offer evidence of other crimes, wrongs, or acts does not apply when the other crimes, wrongs, or acts arise "in the same transaction." Tex.R. Evid. 404(b). "Other crime[s]" may be admissible as same transaction contextual evidence where "several crimes are intermixed, or blended with one another, or connected so that they form an indivisible criminal transaction, and full proof by testimony ... of any one of them cannot be given

---

5. Emphasis added.

without showing the others.". *Rogers v. State*, 853 S.W.2d 29, 33 (Tex.Crim.App. 1993). Testimony that appellant "french kissed" L.G. in the presence of S.S., although evidence of a separate bad act or offense, was evidence so blended and interwoven with the other evidence of appellant's sexual contacts with the girls that it was essential for the jury's understanding of the circumstances and the context of events, including the facts underlying the charged offenses. Accordingly, we conclude that this evidence was same transaction contextual evidence, and, consequently, that the State was not required to give advance notice that it would offer such evidence at trial. Thus, the trial court did not abuse its discretion in overruling appellant's notice objections to the State's offer, or in admitting evidence that appellant "french kissed" L.G. in S.S.'s presence.

Appellant's third point of error is overruled.

## VII. OUTCRY STATEMENT

■ In his fourth point of error, appellant asserts the trial court erred in allowing S.S.'s mother to testify regarding the girl's outcry statement because her outcry did not comport with the indictment's allegations, in violation of article 38.072 of the Texas Code of Criminal Procedure,[6] and denied (1) his right to confrontation under the Sixth Amendment to the United States Constitution and (2) his right to a fair trial and due process of law under the Fourteenth Amendment. Appellant complains that S.S.'s outcry alleged that appellant touched her with his *penis* while the indict-

ment, which alleges aggravated sexual assault of a child, alleges appellant penetrated S.S.'s female sex organ with his *finger*. Appellant objected to the proffered testimony during a hearing outside the jury's presence. The trial court overruled appellant's objection. Appellant did not object on the basis of article 38.072 or constitutional violations when S.S.'s mother actually testified to S.S.'s outcry statement that appellant rubbed his penis on S.S.'s vagina.

■ When the state offers an out-of-court statement pursuant to article 38.072, a defendant must object on the basis of confrontation and/or due course of law to preserve the complaint for appellate review. *Holland v. State*, 802 S.W.2d 696, 699–700 (Tex.Crim.App.1991); *Beckham v. State*, 29 S.W.3d 148, 153 (Tex.App.— Houston [14th Dist.] 2000, pet. ref'd). Failure to make this objection when the evidence is offered waives the complaint on appeal. *Beckham*, 29 S.W.3d at 153. Because appellant did not object to S.S.'s mother's testimony of S.S.'s outcry on any of these bases at the time it was offered, he waived any complaint that S.S.'s outcry did not comport with the offense alleged in the indictment.

Appellant's fourth point of error is overruled.

## VIII. OBJECTIONS TO NURSE GARISON'S TESTIMONY

In his eighth and ninth points of error, appellant complains the trial court erred in overruling his objections to Nurse Brenda Garison's testimony based on (1) her qualification as an expert under Texas Rule of Evidence 702; (2) the admissibility of her

---

6. Article 38.072 allows a hearsay statement from a child abuse victim to be admitted as substantive evidence if

the trial court finds, in a hearing conducted outside of the presence of the jury, that the statement is reliable based on the time,

content, and circumstances of the statement; and the child testifies or is available to testify at the proceeding in court or in any other manner provided by law.

TEX.CODE CRIM. PROC. ANN. art. 38.072, §§ 2(b)(2)-(3) (Vernon Supp. Pamph.2001).

testimony, under Rule 702 and *Daubert,*[7] as to research on which she relied; and (3) the admissibility of hearsay testimony as to statements purportedly made for purposes of medical diagnoses under Texas Rule of Evidence 803(4).

### A. Expert Testimony—Rule 702

■ The trial court granted appellant's request for a running objection as to Nurse Garison's qualification as an expert under Rule 702. *See* TEX.R. EVID. 103(a)(1). Appellant now contends the trial court abused its discretion in allowing Nurse Garison to testify as an expert in L.G.'s cases.[8]

■ The admissibility of evidence generally, and the qualification of a witness to testify as an expert under Rule 702, are within the discretion of the trial court. TEX.R. EVID. 104(a); *Weatherred v. State,* 15 S.W.3d 540, 542 (Tex.Crim.App. 2000) (citing *Prystash v. State,* 3 S.W.3d 522, 527 (Tex.Crim.App.1999)). The trial court abuses its discretion when its decision is so clearly wrong as to fall outside the zone of reasonable disagreement and when the trial court acts arbitrarily and unreasonably, without reference to any guiding rules or principles. *Montgomery v. State,* 810 S.W.2d 372, 380, 391 (Tex. Crim.App.1990).

■ Rule 702 (Testimony by Experts) provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

TEX.R. EVID. 702. This rule contains two initial hurdles that the offering party must clear before expert testimony will be admissible. *Roise v. State,* 7 S.W.3d 225, 234 (Tex.App.—Austin 1999, pet ref'd). As the rule itself requires, the proponent of the testimony must establish (1) that the scientific, technical, or other specialized knowledge will aid the trier of fact,[9] and (2) that the expert is qualified to testify on the subject. *Id.* (citing *Penry v. State,* 903 S.W.2d 715, 762 (Tex.Crim.App.1995)). We read appellant's Rule 702 objection and his argument on appeal as challenging only the second requirement, *i.e.,* the qualification of Nurse Garison as an expert.

**7.** *See Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 593–95, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) (finding that, in determining the reliability of scientific testimony, a number of factors bear on the inquiry including: (1) whether the theory or technique can be or has been tested, (2) whether the theory or technique has been subjected to peer review or publication, (3) the known or potential rate of error, and (4) general acceptance within the relevant scientific community).

**8.** Nurse Garison testified that L.G. had a "fixed overall stare" during the genital examination, an indication of disassociation with what was happening to her. L.G.'s examination revealed "arrhythmia [sic]" or reddening to the vestibule (areas of tissue between the labis minor and hymenal rim), which is "not conclusive of sexual abuse but it has been noted in sexually abused children." She also opined that the results of L.G.'s examination were consistent with a history of sexual abuse.

**9.** Under the first requirement, an expert's opinion should be based on a body of scientific, technical, or other specialized knowledge that is pertinent to the facts in issue, and sufficiently reliable for the expert's testimony to assist the trier of fact. *Roise,* 7 S.W.3d at 234. The Texas Court of Criminal Appeals has acknowledged research concerning the behavior of sexually abused children as a legitimate field of expertise. *See Cohn v. State,* 849 S.W.2d 817 (Tex.Crim.App.1993) (recognizing types of expert knowledge concerning the behavioral characteristics typically exhibited by sexual abuse victims.)

Brenda Garison is a registered nurse. To obtain this license in Texas, she had to successfully complete an accredited program of professional nursing education. *See* TEX. OCC.CODE ANN. § 301.252 (Vernon Pamph.2001). In 1993, she completed a one-year course dedicated to sexual assault cases. Nurse Garison testified that as part of her training, she studied medical literature on genital findings in sexually abused children. At the time she examined L.G., she had been performing sexual assault examinations for more than four years, and had completed over 650 examinations, approximately eighty percent of which were performed on children under age twelve. At the time of trial, Nurse Garison worked at "Child Abuse and Beyond," a non-profit organization in Beaumont, Texas, that interviews, evaluates and treats victims of child sexual abuse. The facility's staff includes a medical director, medical doctor, and an assistant medical examiner.

Nurse Garison outlined the procedures she performs during an examination of a suspected sexual assault victim, explaining in detail the discrete steps in the process: (1) she takes a brief history from the patient for diagnosis and treatment, (2) conducts a complete physical examination, (3) performs a detailed genital examination with the child in the lithotomy position, which involves the child positioned flat on her back with knees bent, and (4) conducts an examination of the hymenal rim, in which she uses a colposcope, which magnifies the tissues and enables the examiner to see any abrasions, tears, or abnormalities during the examination.

Appellant contends the trial court abused its discretion in allowing Nurse Garison to testify as an expert in L.G.'s cases because (1) she has no medical li-

cense or medical doctor's degree; (2) unlike a physician, she cannot render treatment or make medical diagnoses; (3) she lacks the license to prescribe treatment or medicine; (4) she can only provide treatment under a physician's orders and authority; and (5) she was not certified as a "sexual assault nurse examiner" when she examined L.G. in 1997.

No rigid formula exists for determining whether a particular witness is qualified to testify as an expert. *Mega Child Care, Inc. v. Tex. Dep't of Prot. & Reg. Servs.*, 29 S.W.3d 303, 310 (Tex. App.—Houston [14th Dist.] 2000, no pet.); *see Rogers v. Gonzales*, 654 S.W.2d 509, 513 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.) ("It is almost impossible to lay down any definite guidelines for determining knowledge, skill, or experience required in a particular case or of a particular witness."); *see also* 2 STEVEN GOODE ET AL., GUIDE TO THE TEXAS RULES OF EVIDENCE: CIVIL AND CRIMINAL § 702.3 at 54 (Texas Practice Supp.2000). The expertise must be measured against the particular opinion the expert is offering. *Roise v. State*, 7 S.W.3d at 234. Here, Nurse Garison testified as to the findings of her examination and that similar findings had been noted in sexually abused children. Nurse Garison's observations were consistent with L.G.'s version of events.

Appellant does not cite, nor is this court aware of any authority for the proposition that a nurse may not testify as an expert in sexual assault cases because she is neither a licensed medical doctor nor holds a medical degree. To the contrary, this court and others have found that nurses and other medical professionals are qualified as experts in evaluating child abuse cases.[10] A medical license or degree

**10.** *See, e.g., Penry v. State,* 691 S.W.2d 636, 648 (Tex.Crim.App.1985) (relying upon a pre-

vious case, *Walker v. State,* 150 Tex.Crim. 421, 201 S.W.2d 823, 829 (App.1947), in which the

is not the litmus test for qualification as an expert witness. *See* Tex.R. Evid. 702; Hon. Harvey Brown, *Eight Gates for Expert Witnesses*, 36 Hous. L.Rev. 743, 762–63 & n. 133 (1999) (stating "[a]n expert is not necessarily disqualified because of the absence of a license in the field in which he or she is testifying.") (citing *State v. Northborough Ctr., Inc.*, 987 S.W.2d 187, 194 (Tex.App.—Houston [14th Dist.] 1999, no pet.) which provides "there is no language in Rule 702 which can be construed as requiring a witness to have a license in order to testify as an expert."). In fact, the very language of Rule 702 and the case law interpreting it provide that *experience* alone can provide a sufficient basis to qualify a witness as an expert. *Carter v. State*, 5 S.W.3d 316, 319–20 (Tex.App.—Houston [14th Dist.] 1999, pet. ref'd).[11] Thus, a non-physician, such as Nurse Garison, may qualify as a medical expert by virtue of special knowledge or experience in a particular area.

The crux of the analysis requires the court to determine if there is a "fit" between the subject matter at issue and the expert's familiarity with that subject matter. *Roise,* 7 S.W.3d at 234. Applying this criteria, it is possible that a nurse with extensive experience in the identification and treatment of child sexual abuse victims could be *more* qualified to determine whether a child has been sexually abused than a medical doctor whose field of specialization does not touch on that subject.

Appellant argues that a nurse, unlike a physician, cannot legally make a medical diagnosis or prescribe treatment. This is not at issue. The question is whether a nurse can be *qualified* to testify as an expert witness. This determination is based on the expert's "knowledge, skill, experience, training, *or* education regarding the specific issue before the trial court which would qualify the expert to give an opinion on that particular subject." *Id.* (emphasis added) (paraphrasing Tex.R. Evid. 702). It is not dependent on the ability to practice medicine, prescribe

---

court rejected objection to the testimony of a graduate student nurse under the theory that she was not an expert, stating "[s]he was not expressing an opinion from hypothetical questions, but from actual observation of the patient in aiding the doctor in his treatment."); *In the Matter of D.T.C.,* 30 S.W.3d 43, 50 (Tex.App.—Houston [14th Dist.] 2000, no pet.) (allowing pediatric nurse practitioner to testify that the majority of sexually abused children show no signs of physical abuse due to the elasticity of the vagina and anus); *Frohne v. State,* 928 S.W.2d 570, 576 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd) (deciding ineffective assistance claim and finding that because pediatric nurse's suspicions of abuse were based on her education, training, and experience and because the qualification of experts is a discretionary matter for the trial judge to decide, appellant did not show that an objection on that basis to the nurse's testimony would have been sustained); *Butler v. State,* 892 S.W.2d 138, 140 (Tex.App.—Texarkana 1994, no pet.) (finding

trial court did not abuse its discretion in allowing nurse, with "extensive specialized training in the field of child abuse," and a clinical supervisor with a master's in counseling and seventeen years of experience in child abuse, to testify as experts).

**11.** As this court noted in *Carter,* numerous cases from the federal courts state that "a witness may be qualified *on the basis of only one of the five qualifications listed in Rule 702—including practical experience.*" *Id.* (emphasis added)(citing *Lauria v. Nat'l R.R. Passenger Corp.* 145 F.3d 593, 598 (3d Cir. 1998) (stating witnesses can qualify as experts under Rule 702 on the basis of practical experience alone, and a formal degree, title, or educational speciality is not required)); *see Ponder v. Texarkana Mem'l Hosp., Inc.,* 840 S.W.2d 476, 478 (Tex.App.—Houston [14th Dist.] 1991, writ denied) (stating that non-physicians were qualified, by virtue of their experience, to testify about brain function and the causes of damage to the brain).

treatment or make a diagnosis.[12]

■ While Nurse Garison is precluded from making a medical diagnosis or otherwise practicing medicine, she is not precluded from *testifying* about her mandatory duties to perform assessments, make nursing diagnoses, document a patient's symptoms, administer medications and treatments, and implement other measures to make the patient safe.[13] Nurse Garison's testimony showed that at the time she examined L.G., she had training and extensive experience with child sexual assault victims, equipping her with sufficient knowledge, skill, experience, training, and/or education to give expert testimony in L.G.'s cases under Rule 702. Accordingly, we find that Nurse Garison was qualified to testify as an expert under Rule 702.[14]

## B. *Daubert* Challenge

■ We now consider appellant's *Daubert* challenge to Nurse Garison's testimony regarding research in cases of known penetration and the accompanying physical manifestations. Nurse Garison testified she was familiar with a research article in which there were several incidents of known penetration with no medical evidence of penetration. When asked the percentage of cases where there was actually medical evidence seen in the hymen, appellant's counsel voiced a non-specific objection, which the trial court sustained. After laying further foundation for admission of testimony on this research, the State again asked Nurse Garison about the percentage. Appellant objected on the bases of "*Daubert* [sic]" and "hearsay." The trial court overruled these objections. After appellant then questioned Nurse Garison about the research, appellant ob-

12. Nevertheless, we note that the Nursing Practicing Act ("NPA") states that a nurse can make a "nursing diagnosis." Tex. Nurses Ass'n, Ann. Guide to the Texas NPA 3, 6 (4th ed.1999) (*see* annotations); *see* Tex. Occ.Code Ann. § 301.002(2) (Vernon Pamph.2001). A nurse, however, may not make a "medical diagnosis." The Texas Supreme Court has defined "medical diagnosis" as the "analysis of the cause and nature of a patient's condition." *Tex. Employer's Ins. Ass'n v. Sauceda*, 636 S.W.2d 494, 498 (Tex.App.—San Antonio 1982, no writ). Neither the Texas Supreme Court, the Board of Nursing Examiners ("BNE"), nor the NPA has defined "nursing diagnosis." According to the BNE's *Standards of Professional Nursing*, a nurse "shall":

[make] nursing diagnoses which serve as the basis for the strategy of care; .... accurately and completely *report and document* ... the *client's* status including *signs, symptoms and responses;* [and] *collaborate with the client ... and ... the client's significant other(s) in the interest of the client's health care* [.]

22 Tex. Admin. Code § 217.11(2)(B), (4)(A), & (21) (2001) (BNE; Licensure, Peer Assistance & Practice); *see id.* § 213.1 (defining "shall" as a "mandatory provision").

Thus, a "nursing diagnosis" and other nursing duties are very similar to some of those performed by physicians. *See* NPA at 106 (recognizing a "considerable overlap between the practice of medicine and professional nursing" and "that a task may be the practice of medicine when performed by a physician and the practice of nursing when performed by an RN."). Moreover, the Texas Supreme Court has observed that "medical facts may be such that the medical condition is apparent and observable by all." *Loper v. Andrews*, 404 S.W.2d 300, 305 (Tex.1966). Consequently, a nurse may be fully *qualified* to make a diagnosis, especially in an area where she has extensive experience, even though she may be legally precluded from making a "medical diagnosis."

13. *See* § 217.11.

14. Based on our finding that Nurse Garison was qualified to testify as an expert, we find appellant's contention that she could not rely on learned treatises, under Rule 803(18), without merit. *See* Tex.R. Evid. 803(18) (stating that an expert witness can rely upon published treatises, periodicals, or pamphlets on the subject of medicine).

jected to admission of her testimony on this research, stating "[s]he's simply not qualified as an expert to do so." The trial court overruled this objection, and Nurse Garison eventually testified that the research indicated that even in cases of known penetration, 81% of the cases had no medical evidence of penetration.

 To be considered reliable, evidence based on a scientific theory must satisfy three criteria: (1) the underlying scientific theory must be valid; (2) the technique applying the theory must be valid; and (3) the technique must have been properly applied on the occasion in question. *Hartman v. State*, 946 S.W.2d 60, 62 (Tex.Crim.App.1997) (citing *Kelly v. State*, 824 S.W.2d 568, 573 (Tex.Crim.App.1992)); *see Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Under Texas Rule of Evidence 104(a) and (c) and Rule 702, the proponent must establish all three criteria outside the presence of the jury, before the trial court may admit the evidence. *Kelly*, 824 S.W.2d at 573.

 Appellant's objections to Nurse Garison's testimony on the known penetration research, as inadmissible under *Daubert* with Nurse Garison not qualified as an expert, were insufficient to preserve the error appellant asserts on appeal. An objection to the admission of evidence must state the specific grounds for the objection, unless the specific grounds are apparent from the context. *Moon v. Spring Creek Apts.*, 11 S.W.3d 427, 432 (Tex.App.—Texarkana 2000, no

pet.); Tex.R.App. P. 33.1(a)(1)(A). An objection to an improper predicate that fails to inform the trial court exactly how the predicate is deficient will not preserve error. *Bird v. State*, 692 S.W.2d 65, 70 (Tex.Crim.App.1985). Rule 702 and *Daubert* cover numerous requirements and guidelines for the admission of expert testimony. *See Scherl v. State*, 7 S.W.3d 650, 651–52 (Tex.App.—Texarkana 1999, pet. ref'd). Objections based simply on Rule 702 and *Daubert* alone are, in effect, general objections to an improper predicate and do not adequately inform the trial court of any specific complaint upon which it is to rule. Therefore, appellant failed to preserve, for appellate review, any specific complaint about the reliability of this evidence. *See id.*

Appellant's eighth point of error is overruled.

### C. Hearsay Objections

 In his ninth point of error, appellant complains the trial court erred in overruling his hearsay objections to Nurse Garison's testimony concerning statements L.G. and her mother made. Specifically, appellant complains that Nurse Garison's testimony about the offenses is inadmissible hearsay, not made admissible by a medical diagnosis exception to the hearsay rule.[15] Appellant argues that because Nurse Garison did not hold a medical license or a medical degree, she was not qualified to make a diagnosis or give an opinion on any material issue; thus, appel-

---

**15.** Texas Rule of Evidence 803(4), entitled "Statements for Purposes of Medical Diagnosis or Treatment," sets forth an exception to the hearsay rule for statements made for purposes of medical diagnosis and treatment. *See* Tex.R. Evid. 803(4). That rule provides:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

. . . .

(4) Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

*Id.*

lant argues, the statements L.G. and her mother made to Nurse Garison would not be considered "statements for purposes of medical diagnosis or treatment." We disagree.

■ We review a trial court's ruling on the admissibility of evidence under an abuse of discretion standard. *Green v. State*, 934 S.W.2d 92, 100–02 (Tex.Crim. App.1996). We will not reverse a ruling as long as it falls "within the 'zone of reasonable disagreement.'" *Id.* at 102 (quoting *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App.1990)).

Nurse Garison testified, among other things, that she took a general medical history from L.G. for diagnosis and treatment. L.G. disclosed, among other things, that she had experienced sleep disturbances, occasional vomiting, and school and anger management problems.

The crucial issue under Rule 803(4) is whether the out-of-court statement was reasonably pertinent to medical diagnosis or treatment. *See Ziegler v. Tarrant County Child Welfare Unit*, 680 S.W.2d 674, 680 (Tex.App.—Fort Worth 1984, writ ref'd n.r.e.). Texas courts have held that statements by a suspected victim of child abuse as to the causation and source of the child's injuries are admissible under Rule 803(4). *Beheler v. State*, 3 S.W.3d 182, 189 (Tex.App.—Fort Worth 1999, pet. ref'd); *Torres*, 807 S.W.2d at 887. However, it is not the *substance* of the testimony, but rather *the fact that the recipient of the statements in issue* was a non-physician, that appears to concern appellant.

Texas courts have allowed non-physicians to testify under the medical diagnosis and treatment exception to hearsay. *See, e.g., Puderbaugh v. State*, 31 S.W.3d 683, 685 (Tex.App.—Beaumont 2000, pet. ref'd) (allowing *clinical social worker* to testify under Rule 803(4)); *Gohring v. State*, 967 S.W.2d 459, 461 (Tex.App.—

Beaumont 1998, no pet.) (relying upon the exception in Rule 803(4), the court allowed a *play therapist*, under the supervision of a licensed *psychologist*, to testify that the child sexual assault victim was abused by her father); *Moyer v. State*, 948 S.W.2d 525, 527–28 (Tex.App.—Fort Worth 1997, pet. ref'd) (finding trial court did not err in concluding that statements made by patient to *paramedic* were admissible under Rule 803(4)); *Macias v. State*, 776 S.W.2d 255, 258–59 (Tex.App.—San Antonio 1989, pet. ref'd) (finding that statements by a *psychologist* "were admissible under" Rule 803(4) because they "were made for the purpose of medical diagnosis and treatment," and allowing statements by the victim's mother under the same rule); *Torres v. State*, 807 S.W.2d 884, 886–87 (Tex. App.—Corpus Christi 1991, pet. ref'd) (*finding emergency room nurse* could testify as to victim's statement under Rule 803(4) even though nurse was also collecting evidence). Responding to virtually the same argument appellant makes here, the court in *Gohring* noted that "if the statement is made to another for the purpose of medical treatment, the person to whom the statement is made does not necessarily have to be a 'medical person.'" 967 S.W.2d at 461 (relying on the Federal Rules Advisory Committee's note to Rule 803(4)). Accordingly, we find that Nurse Garison's status as a nurse did not disqualify her testimony. We also find that the trial court did not abuse its discretion by admitting, under Rule 803(4), Nurse Garison's testimony regarding the medical history of L.G., including instances of vomiting, withdrawal at school, anger, irritability, aggressiveness, the alleged fondling, the genital examination revealing erythema of the vestibule, and the identity of the accused.

■ Also in his ninth point of error, appellant complains that Nurse Garison

improperly bolstered L.G.'s testimony by republishing accusations that appellant touched L.G.'s genitals. However, appellant's running hearsay objection at trial was not sufficient to preserve this specific complaint for appellate review. *See* TEX. R.APP. P. 33.1; *Matz v. State*, 21 S.W.3d 911, 913 n. 2 (Tex.App.—Fort Worth 2000, pet. ref'd) (op. on remand).

Appellant's ninth point of error is overruled.[16]

The trial court's judgment is affirmed.

WITTIG, J., dissenting.

WITTIG, Justice, dissenting.

Because the majority opinion erroneously allows a nurse to make a "medical diagnosis" contrary to express Texas law, I respectfully dissent. Further, despite numerous objections well understood by the experienced, respected trial court on the diagnosis/treatment issue and the related hearsay issue, the majority opinion divines a waiver, where there was none. I concur with the majority on the remaining issues one through seven.

As the majority aptly observes, a nurse may be qualified to render certain opinions within his or her field. That is not the issue here. Specifically, the State sought to introduce the history taken from both the 11–year–old complainant and *her mother*. The attempted method to escape the clear application of the hearsay rule was that the history was taken for the purposes of examination and treatment. However, a nurse is prohibited by law from making a diagnosis and treating the child.

The registered nurse examined L.G. on April 12, 1997. She spoke with both the mother and child but the history from the child was also taken separately. The nurse's conclusion/diagnosis, however, included "everything." Nurse Garison admitted she could not make a diagnosis or treatment "as a medical doctor." Nevertheless, Garison claims she made a diagnosis at the end of the examination. At one point the trial court correctly sustained the objection that Garison was not qualified to make a diagnosis [1] yet Garison repeatedly asserted she could make a diagnosis. The trial court also correctly sustained the defense objection concerning the use of Ritalin. Garison claimed she could diagnosis sexually transmitted diseases (albeit at least she recognized this activity was under the direction of a physician). After examining children, she claimed to be able to make diagnoses.

Nurse Garison was allowed to present the hearsay testimony of both N.M. and her mother under the guise "that information that's important to you in making your medical diagnosis." To complicate matters, the State offered this hearsay from the mother and child as medical records exception to the hearsay rule. But the records were not offered, no predicate for business records was made, and the trial court erroneously overruled the objections on lack of qualification to give a medical diagnosis, an expert opinion under

---

**16.** The dissent notes that the State did not prove up the hearsay exceptions under Rules 803(2) (outcry) and 803(6) (business records). However, because appellant did not raise these issues in his brief, we do not address them. *See* TEX.R.APP. 38.1.

**1.** The trial court appropriately sustained numerous objections by the defense and was well attuned to the defense's points that: 1)

Garison was not medically qualified to make a diagnosis; 2) accordingly any testimony from the child or mother was hearsay; and 3), the basis of a diagnosis from medical literature was inappropriate and inadmissible because neither that information nor the hearsay could be the basis for telling the jury of the so-called "diagnosis."

Rule 703, and hearsay. Thereafter, the nurse testified about vomiting, withdrawal at school, irritability, aggressiveness, anger, screaming, identity of the accused, the alleged fondling, a genital examination, "disassociation" and articles from the American Pediatrics Journal, arrhythmia to the vestibule, and finally her diagnosis. "The examination was consistent with the history" (i.e ., all the problems related to the allegations of the mother and the child). In short, Garison testified largely as a physician in direct violation of the Medical Practice Act. TEX. OCC.CODE ANN. § 155.001 (Vernon Pamph.2001).

Nurse Garison saw the child as the result of a law enforcement referral, an agency of the State. There is neither any evidence Garison saw the child for treatment nor that there was a treatment plan. Besides bolstering the testimony of the complainant, the apparent use of this nurse's testimony was simple as a conduit for hearsay.

On cross-examination, defense counsel challenged: "You didn't really make any diagnosis of all of this, did you?" She responded: "I came up with a diagnosis and treatment. The diagnosis was consistent with her history."

### The Black Letter Law

"A person may not practice medicine in this state unless the person holds a license issued under this subtitle." TEX. OCC.CODE ANN. § 155.001. Clear enough, you need a license to practice medicine. But what constitutes the practice of medicine? " 'Practicing medicine' means the diagnosis, treatment, or offer to treat...mental or physical disease or disorder or a physical deformity or injury by any system or method, or attempt to effect cures of those conditions. . . ." *Id.* at 151.002.

But you say, what about a nurse or a registered nurse? What can he or she do?

" 'Professional nursing' means the performance for compensation of an act that requires substantial specialized judgment and skill, the proper performance of which is based on knowledge and application of the principles of biological, physical, and social science as acquired by a completed course in an approved school of professional nursing. The term **does not include acts of medical diagnosis or prescription of therapeutic or corrective measures."** *Id.* at 301.002(2) (emphasis added).

Quickly I add, a nurse may observe, assess, evaluate, rehabilitate, care and counsel the ill injured or infirm. *Id.* at 301.002(2)(A). So, too, as I described above, the nurse may perform certain acts delegated by a physician. *Id.* at 301.002(2)(G). Clearly, we can see a nurse is an expert in certain areas, as well-noted by the majority. Equally clear, I would certainly hope, that ordinarily a nurse is prohibited by law from unilaterally making a diagnosis or prescribing treatment. Ordinarily, diagnosis and treatment are the exclusive realm of the physician.

### Exceptions

The law allows a nurse to testify to certain hearsay under limited circumstances. Some of these circumstances include: (1) child outcry under article 38.072 of the Code of Criminal Procedure; *see also Villalon v. State*, 791 S.W.2d 130, 135 (Tex.Crim.App.1990); (2) recitation from a medical record already in evidence, *Johnston v. State*, 959 S.W.2d 230, 237 (Tex. App.—Dallas 1997, no pet.); *Castaneda v. State*, 28 S.W.3d 685, 693 (Tex.App.—Corpus Christi 2000, no pet. h.) (including both testimony she collected rape kit and she read part of report by physician); (3) under the supervision of a physician or as a therapist (also under appropriate supervi-

sion),[2] *Gohring v. State,* 967 S.W.2d 459, 460 (Tex.App.—Beaumont 1998, no pet.); and (4) certified sexual assault nurse examiners would presumably be given greater latitude in their testimony given their statutory authority for forensic examinations, care of sexual assault survivors, and statutory expert designation. TEX. GOV'T CODE ANN. § 420.003; SANE Regulations, § 62.25, Office of Attorney General. Garison is not shown to be a certified sexual assault nurse examiner although she was in pursuit of the "SANE" certification.

### Application

In our case, the State did not prove up any business or medical records exception. TEX.R. EVID. 803(6). The State did not prove the outcry exception. The State did not show Garison took the history under the supervision of a physician. The State was prohibited by law from obtaining a medical diagnosis or statement of treatment from a non-physician. Garison was prohibited by law from making a diagnosis or treatment of complaint. Ergo, the trial court erred in admitting the history for the purposes of diagnosis, by allowing hearsay from a physician journal,[3] which necessarily could not be relied on by a nurse to make a prohibited diagnosis, and by allowing Garison's testimony as to her diagnosis.

I see no reason to indulge in the futility of a harm analysis. Clearly a substantial right of the accused was abused by the

wholesale admission of damaging hearsay. TEX.R. EVID. 103.

---

**2.** Section 301.002(2) of the Occupations Code prohibits a nurse, explicitly, from making a medical diagnosis and prescribing treatments. R.N.'s may, however, make a limited "nursing diagnosis ." *See* TEXAS NURSES ASS'N, ANN. GUIDE TO THE TEXAS NPA, 6 (4th ed.1999). Contrary to the majority opinion, a nursing diagnosis is a term of art used in the nursing/medical profession. My research indicates that a nursing diagnosis is limited to attending to patient comfort, administration of fluids, or

drugs per physician direction, and attending to the general welfare of a patient. A nursing diagnosis specifically does not include or allow a medical diagnosis, which was the question asked by the government.

**3.** With a proper predicate, the learned treatise or journal could be properly admitted under TEX.R. EVID. 803(18), but not as a basis for a medical diagnosis.