Opinion filed April 12, 2007
















 
 
  
 
 







 
 
  
 
 




Opinion filed April 12, 2007

 

 

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh Court of
Appeals

                                                                 ____________

 

                                                          No. 11-05-00289-CR

                                                    __________

 

                                       JOE FLORES, JR., Appellant

                                                             V.

                                        STATE OF TEXAS, Appellee

 



 

                                          On
Appeal from the 39th District Court

                                                         Haskell County, Texas

                                                     Trial
Court Cause No. 5995

 



 

                                                                   O
P I N I O N

The jury convicted Joe Flores, Jr. of the offense
of aggravated sexual assault of a child younger than fourteen years of
age.  See Tex. Pen. Code Ann. '
22.021(a)(1)(A)(i), (a)(2)(B) (Vernon
Supp. 2006).  The jury assessed appellant=s punishment at fifty years confinement
and a $5,000 fine.  In two appellate
issues, appellant complains of evidentiary error.  We affirm.








At trial, the State presented expert testimony,
over appellant=s
objection, from Dr. Terry Johnson.  Dr.
Johnson testified about the results of a sexual abuse examination that he
performed on the child.  Dr. Johnson said
that his examination of the child revealed a lack of hymenal tissue, which was
indicative of healed trauma.  Appellant
attempted to present expert testimony from April Bennett.  At the time of trial, Bennett was pursuing a
registered nurse=s
license.  She had completed a nursing
school program, but she had not taken her nursing boards.  The State objected to Bennett=s testimony on the ground that she was
not qualified to testify as an expert witness. 
The trial court ruled that Bennett was not qualified as a medical
expert.  Therefore, the trial court
excluded her testimony.  In appellant=s bill of proof, Bennett testified that
trauma to the hymen can occur in a number of ways.

In his first issue, appellant asserts that the
trial court erred in admitting the testimony of Dr. Johnson.  In his second issue, appellant asserts that
the trial court erred in excluding the testimony of Bennett.  We use an abuse of discretion standard in
reviewing a trial court=s
determination of a witness=s
qualifications as an expert and its judgment regarding the admission of any
expert testimony.  Ellison v. State,
201 S.W.3d 714, 723 (Tex.
Crim. App. 2006).  Absent a clear abuse
of discretion, a trial court=s
decision to admit or exclude testimony will not be disturbed.  Wyatt v. State, 23 S.W.3d 18, 27 (Tex. Crim. App.
2000).  Thus, an appellate court must
uphold the trial court=s
ruling if it was within the zone of reasonable disagreement.  Weatherred v. State, 15 S.W.3d 540,
542 (Tex. Crim. App. 2000); Montgomery v. State, 810 S.W.2d
372, 391 (Tex. Crim. App. 1991).

Tex. R.
Evid. 702 governs the admissibility of expert testimony.  Under Rule 702, a witness may qualify as an
expert by virtue of Aknowledge,
skill, experience, training, or education.@  Rule 702 does not require a witness to hold a
license or a certification for the purpose of qualifying as an expert.  Duran v. State, 163 S.W.3d 253, 258
(Tex. App.CFort
Worth 2005, no pet.); Gregory v. State, 56 S.W.3d 164, 179-80 (Tex. App.C Houston [14th Dist.] 2001, pet. dism=d).

Dr. Johnson testified about the results of his
examination of the child.  Appellant does
not assert that medical testimony from a qualified expert witness is an
unreliable type of evidence. Rather, appellant asserts that Dr. Johnson could
not provide reliable testimony because A[he]
was abusing addictive drugs just weeks before [the child=s]
physical examination@
and that A[he] had
been caught in a recurrence shortly before trial.@








At the time of trial, Dr. Johnson was serving a
ninety-day suspension of his medical license. He testified that the suspension
related to his abuse of a hydrocodone-based cough syrup.  Dr. Johnson said that hydrocodone is a form
of codeine.  He said that he began taking
the cough syrup for treatment of a sinus infection in early 2003 and that his
use progressed to an addiction.  Dr.
Johnson said that, during 2003, he tried to stop using the cough syrup a number
of times but that he was unable to stop. 
Dr. Johnson testified that he voluntarily turned himself into the
medical board in December 2003.  Dr.
Johnson said that the board placed him on probation for ten years and required
him to submit to random urine drug testing on approximately a weekly
basis.  He said that he was tested more
than once during some weeks.

Dr. Johnson testified that he examined the child
on February 4, 2004.  He said that he did
not have any kind of drug in his system on that day.  He also said that he had not taken any kind
of drug in between the time he turned himself in to the medical board and the
date he examined the child. Dr. Johnson also testified that he took about fifty
random drug tests during 2004 and that he did not fail any of the tests.

Dr. Johnson said that, in February 2005, he went
on a medical mission trip to Sri
 Lanka to help with tsunami relief
efforts.  He said that, while there, he
used a drug similar to hydrocodone on a one-time basis.  When he returned to the United States,
he failed a drug test, and the board suspended his license for ninety days and
placed him on probation for fifteen years. 
He testified that his license would be re-instituted on September 1,
2005.

Dr. Johnson also testified in detail about his
education, training, and experience as a medical doctor.  He said that he had received specialized
training in examining child sexual assault victims. Dr. Johnson said that he
became board certified in pediatrics in 1992. 
He further testified that he had performed about six hundred
examinations on children to determine whether sexual abuse had occurred.  Dr. Johnson also explained the criteria and
procedures used during sexual assault examinations.  Dr. Johnson testified that his findings
during the examination of the child in this cause were consistent with sexual
abuse.








The record demonstrates that Dr. Johnson had
extensive training and experience in examining child sexual assault
victims.  He testified that he had
performed about six hundred sexual assault examinations.  The record does not show that Dr. Johnson was
under the influence of any type of drug when he examined the child or when he
testified at trial.  Thus, the record
does not support appellant=s
claim that Dr. Johnson could not give reliable testimony.  Based on Dr. Johnson=s
training and experience, the trial court did not abuse its discretion in
allowing Dr. Johnson to testify as an expert witness.  See Gregory, 56 S.W.3d at 179-81
(nurse who had received training and had performed over 650 sexual assault
examinations was qualified to testify as an expert witness).  We overrule appellant=s
first issue.

In his second issue, appellant argues that Bennett
was qualified to testify as an expert witness under Rule 702.  Bennett=s
proposed testimony related to activities that can cause damage or trauma to the
hymen.  During the bill of proof, Bennett
identified a number of ways that she believed a hymen could be torn.  The trial court ruled that Bennett was not
qualified to testify as a medical expert.

In sexual abuse cases, a nurse may qualify as a
medical expert witness based on the nurse=s
special knowledge or experience in a particular area.  Gregory, 56 S.W.3d at 180.  Bennett testified about her training and
experience.  Bennett said that she was a
graduate nurse; that she had completed a two-year nursing school program; that
she was pursuing her registered nurse=s
license; that she had not taken her nursing boards; that she had studied the
areas of anatomy and physiology during nursing school; that she had served one
year as a student nurse intern; that, as part of her curriculum and her
experience as an intern, she had studied and understood the female reproductive
organ; and that she was familiar with the terms hymen and broken hymen.  Bennett also testified that she had observed
two sexual assault examinations.

Bennett=s
testimony demonstrated that she had minimal training and experience in the
areas of sexual abuse and causes of trauma to the hymen.  Given her lack of training and experience,
the trial court did not abuse its discretion in finding that she was not
qualified to testify as an expert witness.

Appellant also argues that Bennett=s testimony was admissible as lay
opinion testimony under Rule 701 of the Texas Rules of Evidence.  Tex.
R. Evid. 701.  In Osbourn v.
State, 92 S.W.3d 531 (Tex. Crim. App. 2002), the Court of Criminal Appeals
explained the differences between lay opinion testimony under Rule 701 and
expert opinion testimony under Rule 702:

Rule
701 covers the more traditional witness B
one who Awitnessed@ or participated in the events about
which he or she is testifying B
while Rule 702 allows for a witness who was brought in as an expert to testify.

 








Osbourn, 92 S.W.3d at 535. 
Rule 701 allows a witness to testify in the form of an opinion if the
opinions or inferences are (a) rationally based on his or her perceptions and
(b) helpful to the clear understanding of the testimony or the determination of
a fact in issue.  Id. (citing Fairow v. State,
943 S.W.2d 895, 898 (Tex. Crim. App. 1997)).  Perceptions refer to a witness=s interpretation of information
acquired through his or her own senses or experiences at the time of the event
(i.e., things the witness saw, heard, smelled, touched, felt, or tasted).  Id.  Because Rule 701 requires the testimony to be
based on the witness=s
perception, it is necessary that the witness personally observed or experienced
the events about which he or she is testifying. 
Id.
(citing Fairow, 943 S.W.2d at 
898).  Thus, the witness=s testimony can include opinions,
beliefs, or inferences as long as they are drawn from his or her own
experiences or observations.  The Aperception of the witness@ portion of the rule incorporates the
personal knowledge requirement of Tex.
R. Evid. 602, which states that a witness may not testify to a matter
unless he or she has personal knowledge of the matter.  Id.;  Fairow, 943 S.W.2d at 903; Bigby v.
State, 892 S.W.2d 864, 889 (Tex. Crim. App. 1994).  The proponent of lay opinion testimony has
the burden to establish that the witness has personal knowledge of the events
upon which his or her opinion is based.  Fairow,
943 S.W.2d at 898.

Bennett=s
testimony failed to satisfy the personal knowledge requirement.  She had no personal knowledge of the facts in
this case.  She did not personally
observe any events or activities involving the child.  Bennett was not present during Dr. Johnson=s examination of the child.  Bennett did not offer any opinions relating
specifically to the child.  Rather, she
testified about trauma to the hymen in general. 
Bennett=s
testimony was not admissible as lay opinion testimony under Rule 701.

The trial court did not abuse its discretion in
excluding Bennett=s
testimony.  We overrule appellant=s second issue.

We affirm the judgment of the trial court.

 

 

TERRY McCALL

JUSTICE

April 12, 2007

Do not publish.  See
Tex. R. App. P. 47.2(b).

Panel
consists of:  Wright, C.J.,

McCall,
J., and Strange, J.