NOS. 12-02-00224-CR


 12-02-00225-CR


 12-02-00226-CR



IN THE COURT OF APPEALS
 


TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS


MARK ANTHONY HOUSEWORTH,
§
 APPEAL FROM THE 114TH

APPELLANT


V.
§
 JUDICIAL DISTRICT COURT OF


THE STATE OF TEXAS,

APPELLEE
§
 SMITH COUNTY, TEXAS

 

MEMORANDUM OPINION


 Mark Anthony Houseworth ("Appellant") appeals three convictions for indecency with a
child. In three issues on appeal, Appellant asserts that the evidence is not legally or factually
sufficient to support his convictions, and that the trial court erred in allowing the complaining child
witness to testify because she was not competent. We affirm.


Background

 Appellant was charged by three indictments with indecency with a child. (1) Each of the
indictments included one enhancement paragraph alleging a prior felony offense. Appellant pleaded
not guilty and elected a trial by jury. At trial, the complaining child witness, B.B., described several
incidents she alleged occurred during the first part of December 2001. At the time of the incidents,
she was nine years old, living in a mobile home with her mother, Sheila Houseworth ("Sheila"); her
younger brother, S.B.; her stepfather, Appellant; Sheila and Appellant's daughter, S.H.; and
Appellant's mother, Linda Lines ("Lines"). 

 In the first incident, B.B. crawled into Appellant's bed on her mother's side, laid across the
middle of Appellant's stomach, and played with his chest. Appellant was covered by a sheet and a
blanket. Appellant picked her up with his hands and moved her on top of him to a position where
their genitals touched. She then rolled off Appellant and left the room momentarily, but returned.
When she returned to the bedroom, Appellant repeated his actions. At some point, Appellant kicked
the covers back with his feet, picked her up, and turned her around. As she rolled off Appellant,
B.B. saw Appellant's exposed genitals before turning her head away.

 The next night, B.B. went to Appellant's bedroom. She believes Lines was sleeping and S.B.
was in his bedroom. Appellant was in bed undressed. B.B. again crawled into bed on her mother's
side, and lying on a pillow, sat beside Appellant watching television. Appellant's covers came off,
and he moved her hand and put it on his "private part." She tried to pull away, but he held her hand
tight. She stated that her finger touched his private part, but that she did not "grab it" or hold it. She
pulled her hand away and lay back down. Appellant covered up. B.B. felt very uncomfortable. She
testified that Appellant's "private part" was hard to the touch. 

 That same night, B.B. was sitting on Appellant's stomach and he ran his hand down her back
from her neck to her buttocks and between her legs to her genitals. (2) Appellant grabbed B.B.'s
genitals through her clothes, but did not hurt her. Appellant also ran his hand down the front of her
body from her chin, down the middle of her chest, to her genitals. B.B. demonstrated with a tissue
box how Appellant would run his hand down the front of her body, using the box as if it were
Appellant's hand. According to B.B., part of Appellant's hand touched her breasts. However, she
also testified at one point that he never fondled or tickled her breasts or touched her chest. 

 B.B. described another incident, although it is not clear from the record when it occurred. 
At some point while B.B. was sitting on Appellant's chest and patting him, Appellant scooted her
back and "sat" her on his genitals. She testified that she could "kind of" feel his genitals through her
clothing, although she could not remember if his penis felt hard or soft. 

 B.B. testified that she never saw a tattoo on Appellant's body that was normally covered by
clothing. She said she never saw Appellant's genitals shaved and cannot remember telling Michael
Bennett ("Bennett"), a Whitehouse police detective, that Appellant's private parts were shaved. She
testified that Appellant's private parts were hairy. She also testified that while she was in
Appellant's bedroom, she was always clothed, but Appellant never wore clothing when he was in
bed.

 B.B. testified that Appellant's mother, Lines, was usually asleep or not there when these
incidents with Appellant occurred. When B.B. got home from school, Appellant and Lines were
usually at the house. She believes her mother came home around 11:00 p.m. on the night of the
second incident. B.B. and Sheila gave differing accounts of the time her mother usually came home.

 B.B. did not tell her mother, Sheila, of Appellant's actions because she knew Sheila loved
Appellant and she did not think that Sheila would believe her. Further, Appellant told B.B. not to
say anything about the incidents when somebody was around. B.B. testified that she did not think
about Appellant's actions at school because she did not want it to affect her concentration or
schoolwork. However, she confided in an adult friend who lived near her maternal grandmother,
Sheila Crum ("Crum"). As B.B. expected, the friend called Crum, and B.B. told Crum what had
occurred.

 Linda Davis ("Davis"), a counselor at B.B.'s school, testified that B.B. was called to the
school office on February 25, 2002, because two officers from the Whitehouse Police Department
asked to talk to her. When Davis informed B.B. that the police wanted to talk to her, B.B. began to
cry, sob, and ask how they found out. During the interview with the officers, Davis described B.B.
as giving very articulate answers to the officers' questions. Based on B.B.'s demeanor and grades,
Davis did not have any reason to believe that there was anything wrong with B.B. or that she was
having any difficulty.

 Bennett testified that he is a detective with the Whitehouse Police Department. He met B.B.
at school because of a Child Protective Services ("CPS") report alleging sexual abuse. He and
Officer Michael Gromatzky ("Gromatzky"), spoke with B.B. who was articulate, gave vivid
descriptions to his questions, and seemed upset. B.B. described Appellant's genital area as clean
shaven, lumpy, and hard. Based upon their conversation, Bennett believed that the case needed
further investigation. After interviewing B.B., Bennett contacted CPS and took B.B. to the Child
Advocacy Center (the "Center"). At some point, B.B.'s family came to the Center. 

 Bennett and Gromatzsky spoke to Appellant at the Center. Appellant stated that he did lie
in bed naked and watch television. Appellant stated that his genital area was shaved. He told
Bennett that sometimes B.B. would barge into his bedroom without knocking when he was naked
under the covers in his bed. Appellant denied B.B.'s allegation that he placed her hand on his penis.
Appellant admitted that while lying in his bed naked, he might have been semi-erect from a
"forethought" or watching television when B.B. came in the bedroom. Appellant agreed that he
would run his hand down B.B.'s back and underneath her buttocks, but instead of squeezing her
genitals as B.B. described, he would pinch the inside of her thigh. Appellant stated that B.B. was
always clothed, but admitted that he was naked. Bennett believes that Appellant told him that he
slept in the nude on occasion. According to Bennett's report, Appellant stated that he knew he was
in trouble.

 Sheila testified that she had been married to Appellant for one and a half years. At the time
of trial, Sheila and Appellant had two children. From October to December of 2001, Sheila worked
from 1:00 p.m. to 9:00 p.m. If Appellant was working, he worked days. Sheila left work every night
at 9:00 p.m. and arrived home approximately fifteen minutes later. She testified that she never
arrived home from work later than 10:15 p.m., and B.B. was always asleep in her bedroom. Lines
lived with the family at the time, and was always there when Sheila arrived home from work. In fact,
Sheila stated that Lines never went out or went to bed before she (Sheila) came home. During this
period of time, Appellant's father, Eddie Houseworth ("Eddie"), also lived with the family and was
always at the house. Sheila testified that B.B.'s relationship with Appellant was very good. From
October 2001 to January of 2002, she did not notice anything unusual in B.B.'s conduct, attitude,
disposition, or any change in B.B.'s and Appellant's relationship with one another.

 Sheila testified that she and Appellant slept nude. She testified that he shaved his pubic hair
once in June of 2000 when their oldest daughter was born. However, Sheila also testified that their
oldest daughter was one year old at the time of trial in July of 2002. She denied Appellant was in
bed nude with any of the children unless she was home. B.B. could have seen Appellant nude
because, on a few occasions, she bolted into their bedroom without knocking. However, their
bedroom was off limits to the children unless Sheila was there. Appellant has several tattoos on his
body, including two on the top of his penis, an inch-long word "Godzilla" and a dime-sized swastika.
She "guesses" that if a person were on either side of Appellant's penis, the Godzilla tattoo would not
be visible.

 Lines, Appellant's mother, testified that she lived with his family in the late fall of 2001.
Sheila usually arrived home from work between 8:00 p.m. and 9:00 p.m. Lines slept on the couch.
Appellant watched television in his bedroom. When she went to Appellant's bedroom, he was
always in his clothes, even lying on the bed watching television. From October to December 2001,
there was never a time when Sheila was gone that Lines would not be at the house. To her
knowledge, Appellant was never left alone with the children.

 Crum testified that she is B.B.'s maternal grandmother. On several occasions between
October and December 2001, she visited B.B. in the early evenings when Sheila was at work. 
According to Crum, neither Lines nor Eddie was always at Sheila's house. In fact, Appellant was
sometimes alone with the children. Crum stated that B.B. did not behave as if anything was wrong
when she was around Appellant. She never noticed any inappropriate behavior, conduct, touching,
or kissing between B.B. and Appellant. Sheila's family moved in with Crum in January 2002. Crum
testified that, in early February 2002, B.B. told a neighbor about Appellant's alleged offenses against
her. The neighbor called Crum, and B.B. then told Crum about Appellant's behavior.

 The jury found Appellant guilty of three offenses of indecency with a child as alleged in the
indictments, and assessed punishment at life and a fine of $10,000 for each conviction. (3) Further, 
the trial court granted the State's motions to cumulate sentences and ordered that Appellant's
sentences run consecutively.

 

Competency of Child Witness

 In his third issue, Appellant contends that the trial court erred in allowing B.B. to testify
because she was not competent. The State disagrees and contends that the child was shown to be
competent to testify. Further, the State contends that a review of B.B.'s testimony demonstrates that
the trial court did not commit error in allowing her to testify.

 The Texas Rules of Evidence state that every person is competent to be a witness except
"[c]hildren or other persons who, after being examined by the court, appear not to possess sufficient
intellect to relate transactions with respect to which they are interrogated." Tex. R. Evid. 601(a)(2).
This rule creates a presumption that a person is competent to testify. Reyna v. State, 797 S.W.2d
189, 191 (Tex. App.-Corpus Christi 1990, no pet.); Rodriguez v. State, 772 S.W.2d 167, 170 (Tex.
App.-Houston [14th Dist.]1989, pet. ref'd). The competency of a witness is for the trial court to
resolve, and a ruling by the trial court will not be disturbed on appeal unless an abuse of discretion
can be shown. Watson v. State, 596 S.W.2d 867, 871 (Tex. Crim. App. [Panel Op.] 1980); Clark
v. State, 558 S.W.2d 887, 890 (Tex. Crim. App. 1977). In determining whether there has been an
abuse of discretion, an appellate court must review the entire testimony of a witness in addition to
the preliminary competency examination. Clark, 558 S.W.2d at 890; Reyna, 797 S.W.2d at 191. 

 However, in order to present an issue for appellate review, the record must show that a
complaint was made to the trial court by a timely request, objection, or motion. Tex. R. App. P.
33.1(a)(1). The request, objection, or motion must state the grounds for the ruling that the
complaining party sought from the trial court with sufficient specificity to make the trial court aware
of the complaint. Tex. R. App. P. 33.1(a)(1)(A). The trial court must have ruled on the request,
objection, or motion, either expressly or implicitly. Tex. R. App. P. 33.1(a)(2)(A). If the trial court
refused to rule, the complaining party must have objected to the refusal. Tex. R. App. P.
33.1(a)(2)(B). 

 After examining B.B. outside the presence of the jury, the trial court found the child 
"certainly competent" to testify at trial. However, the record does not reveal that Appellant timely
objected to the trial court's finding. Therefore, he presents nothing for our review. Accordingly,
Appellant's third issue is overruled.


Evidentiary Sufficiency

 In his first and second issues, Appellant argues that the evidence is legally and factually
insufficient to support three convictions for indecency with a child. More specifically, Appellant
contends that the evidence was insufficient to prove that Appellant had sexual contact with B.B. in
three different ways. The State disagrees, and argues that B.B.'s evidence was both legally and
factually sufficient to support the convictions.

Standard of Review

 "Legal sufficiency is the constitutional minimum required by the Due Process Clause of the
Fourteenth Amendment to sustain a criminal conviction." Escobedo v. State, 6 S.W.3d 1, 6 (Tex.
App.-San Antonio 1999, no pet.) (citing Jackson v. Virginia, 443 U.S. 307, 315-16, 99 S. Ct. 2781,
2786-88, 61 L. Ed. 2d 560 (1979)). The standard of review is whether any rational trier of fact could
have found the essential elements of the offense beyond a reasonable doubt. Jackson, 443 U.S. at
319, 99 S. Ct. at 2789; LaCour v. State, 8 S.W.3d 670, 671 (Tex. Crim. App. 2000). The evidence
is viewed in the light most favorable to the verdict. Jackson, 443 U.S. at 319, 99 S. Ct. at 2789;
LaCour, 8 S.W.3d at 671. The conviction will be sustained "unless it is found to be irrational or
unsupported by more than a 'mere modicum' of the evidence." Moreno v. State, 755 S.W.2d 866,
867 (Tex. Crim. App. 1988). The jury is the sole judge of the credibility of witnesses and of the
weight to be given their testimony. Barnes v. State, 876 S.W.2d 316, 321 (Tex. Crim. App. 1994). 
Any reconciliation of conflicts and contradictions in the evidence is entirely within the jury's
domain. Losada v. State, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986). If a reviewing court finds
the evidence legally insufficient to support a conviction, the result is an acquittal. Tibbs v. Florida,
457 U.S. 31, 41-42, 102 S. Ct. 2211, 2217-218, 72 L. Ed. 2d 652 (1982). 

 After a reviewing court has found that the evidence is legally sufficient to support the verdict,
the court may go forward with a review of the factual sufficiency of the evidence. Clewis v. State,
922 S.W.2d 126, 133 (Tex. Crim. App. 1996). In reviewing factual sufficiency, a court examines
all the evidence "without the prism of 'in the light most favorable to the prosecution' and sets aside
the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong
and unjust." Id. at 134. The court must inquire whether a neutral review of all the evidence, both
for and against the verdict, establishes that the proof of guilt is so manifestly weak as to undermine
faith in the jury's resolution, or the proof of guilt, although sufficient if taken alone, is greatly offset
by conflicting proof. Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).

 A proper deference should be demonstrated by the reviewing court in order to deter a court
from substituting its judgment for that of the fact finder, and any examination of the evidence should
not substantially intrude upon the fact finder's role as the exclusive judge of the weight and
credibility given to witness testimony. Id. at 7; Clewis, 922 S.W.2d at 133. Wrong and unjust
verdicts include ones in which the verdict is "manifestly unjust," "shocks the conscience," or "clearly
demonstrates bias." Santellan v. State, 939 S.W.2d 155, 165 (Tex. Crim. App. 1997). The
reviewing court examines all of the evidence in the record pertaining to the factual sufficiency
challenge, not just evidence confirming the verdict. Id. at 164. 

 In a criminal conviction, sufficiency of the evidence is determined by the elements of the
crime as defined by the hypothetically correct jury charge. Malik v. State, 953 S.W.2d 234, 240
(Tex. Crim. App. 1997). The correct charge "would be one that accurately sets out the law, is
authorized by the indictment, does not unnecessarily increase the State's burden of proof or
unnecessarily restrict the State's theories of liability, and adequately describes the particular offense
for which the defendant was tried." Id.

Elements of the Offense

 A person commits the offense of indecency with a child if he (1) engages in sexual contact
(2) with a child (3) who is younger than seventeen years of age and (4) was not the spouse of the
accused (5) or causes the child to engage in sexual contact. Tex. Pen. Code Ann. § 21.11(a)(1);
Gregory v. State, 56 S.W.3d 164, 171 (Tex. App.-Houston [14th Dist.] 2001, pet. dism'd);
Couchman v. State, 3 S.W.3d 155, 162 (Tex. App.-Fort Worth 1999, pet. ref'd). "Sexual contact"
means any touching by a person, including touching through clothing, of the anus, breast, or any part
of the genitals of a child or any touching of any part of the body of a child, including touching
through clothing, with the anus, breast, or any part of the genitals of a person. Tex. Pen. Code Ann.
§ 21.11(c). The testimony of a child victim alone is sufficient to support a conviction for indecency
with a child. Tear v. State, 74 S.W.3d 555, 560 (Tex. App.-Dallas 2002, pet. ref'd).

 The acts of "sexual contact" must be committed with the intent to arouse or gratify the
sexual desire of any person. Tex. Pen. Code Ann. § 21.11(c). The requisite specific intent to arouse
or gratify the sexual desire of any person may be inferred from the accused's conduct, his remarks,
and all surrounding circumstances. McKenzie v. State, 617 S.W.2d 211, 216 (Tex. Crim. App.
[Panel Op.] 1981); Couchman, 3 S.W.3d at 163.

Analysis

 We must first determine whether Appellant engaged in sexual contact with B.B. or caused
her to engage in sexual contact. See Tex. Pen. Code Ann. § 21.11(a)(1); Gregory, 56 S.W.3d at
171; Couchman, 3 S.W.3d at 162. The indictments specifically accuse Appellant of touching B.B.'s
genitals, touching B.B.'s breast, and of causing B.B. to touch his genitals. According to B.B.,
Appellant "sat" her on his genitals, and twice laid her on top of him in a position where their genitals
touched. B.B. testified that Appellant ran his hand down her back, between her legs, and touched her
genitals. Further, B.B. stated that when Appellant ran his hand down the front of her body, part of
his hand touched her breasts. Finally, Appellant forced her hand to touch his penis. Thus, viewing
the evidence in the light most favorable to the jury's verdict, we conclude that a rational trier of fact
could have found that Appellant touched B.B.'s genitals and her breasts, and caused her to touch his
genitals. 

 However, Appellant's acts must be committed with the specific intent to arouse or gratify the
sexual desire of any person. See Tex. Pen. Code Ann. § 21.11(c). The specific intent may be
inferred from Appellant's conduct, remarks, and surrounding circumstances. See McKenzie, 617
S.W.2d at 216; Couchman, 3 S.W.3d at 163. B.B. testified that Appellant's "private part" was hard
when he forced her to touch it. Appellant told her not to discuss these incidents when someone else
was around. Further, Appellant told Bennett that he knew he was in trouble. Appellant's conduct
and remarks would support an inference that he had the specific intent to arouse or gratify his sexual
desire. Based on our review of the record and viewing the evidence in the light most favorable to
the jury's verdict, we conclude that a rational trier of fact could have found the elements of
indecency with a child beyond a reasonable doubt. Accordingly, Appellant's first issue is overruled. 

 Having determined that the evidence is legally sufficient to support the verdict, we address
factual sufficiency. B.B. testified that Appellant did not touch her chest when he ran his hand down
the front of her body. She and Sheila gave conflicting testimony about the time of night Sheila came
home from work. B.B. did not exhibit signs of falling grades at school and testified that she did not
want Appellant's actions to affect her schoolwork. None of the adults, Davis, Sheila, or Crum,
noticed anything in B.B.'s actions or demeanor to indicate that she had been molested. Sheila did
not notice any change in the relationship between B.B. and Appellant. B.B. did not notice any
tattoos or markings on Appellant's genitals. Although B.B. testified that Appellant's genitals were
hairy, she told Bennett that Appellant's genitals were shaved. Appellant denied that he placed B.B.'s
hand on his penis or that he squeezed her genitals. There was conflicting testimony as to whether
Lines was always at the house while Sheila was at work. All this evidence is in favor of Appellant. 
However, the trier of fact is the sole judge of the credibility of witnesses and of the weight to be
given their testimony. See Barnes, 876 S.W.2d at 321. It is within the jury's domain to resolve any
conflicts or contradictions in the evidence. See Losada, 721 S.W.2d at 309. In reviewing the entire
record, both for and against the jury's verdict, we conclude that proof of Appellant's guilt is not so
manifestly weak as to undermine faith in the jury's resolution, nor is the proof of guilt, although
sufficient if taken alone, greatly offset by conflicting proof so as to render Appellant's conviction
clearly wrong or manifestly unjust. Accordingly, Appellant's second issue is overruled.


Conclusion

 Based upon our review of the record, we hold that the evidence is both legally and factually
sufficient to support the jury's verdict. Further, Appellant's third issue presents nothing for our
review. Accordingly, the judgments of the trial court are affirmed.




 SAM GRIFFITH 

 Justice



Opinion delivered January 30, 2004.

Panel consisted of Worthen, C.J., Griffith, J., and DeVasto, J.






(DO NOT PUBLISH)
1. Tex. Pen. Code Ann. § 21.11(a)(1) (Vernon 2003).
2. In her testimony, B.B. does not explain why she was sitting on Appellant's stomach during this incident.
3. An offense under section 21.11(a)(1) is a second-degree felony. Tex. Pen. Code Ann. § 21.11(d).
Appellant pleaded true to the enhancement paragraph in each of the three indictments. Because of the enhancement
paragraphs, Appellant was punished for a first-degree felony on conviction of each offense. Tex. Pen. Code Ann. 
 § 12.42(b) (Vernon 2003). Punishment of a first-degree felony is imprisonment for life or for any term of not more
than ninety-nine years or less than five years and, in addition, a fine not to exceed $10,000. Tex. Pen. Code Ann.   
§ 12.32 (Vernon 2003).